**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| WOMEN'S APPAREL GROUP, LLC | Case No. 11-16217 (JNF) |
| Debtor. | (Involuntary) |

**MOTION OF DISTINCTIVE APPAREL, INC.
FOR RELIEF FROM THE AUTOMATIC STAY**
**(Expedited Determination Requested)**

Distinctive Apparel, Inc. ("**DAI**"), by and through its undersigned counsel, hereby submits this *Motion of Distinctive Apparel, Inc. for Relief From the Automatic Stay* (the "**Stay Relief Motion**") pursuant to section 363(d)(2) of the United States Bankruptcy Code, Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, and Rule 4001-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Massachusetts.  In support thereof, DAI respectfully states as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over the subject matter of the Stay Relief Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

**BACKGROUND**

3.      Women's Apparel Group, LLC ("**WAG**" or, the "**Debtor**") is a limited liability company engaged in the sale of women's clothing.

4.      DAI is the current holder of senior secured claims against the Debtor.   The President of DAI is Lawrence Berger.  A true and correct copy of the Declaration of Lawrence Berger in support of this Stay Relief Motion the "**Berger Declaration**") which evidences, among other things, the validity, amount and priority of the indebtedness owed to DAI, as well as DAI's determination of book value and liquidation value of the collateral securing the indebtedness owed to DAI, is attached hereto as Exhibit A and incorporated by reference herein.

5.      Pursuant to the loan agreements and chain of title described in the Berger Declaration, the Debtor and two other affiliated entities, Casual Living Acquisition, LLC ("**CLA**") and Women's Apparel Marketing Group, LLC ("**WAG Marketing**"), are borrowers of DAI, and have granted a first priority security interest to DAI in substantially all of their respective real and personal property as described in the loan documents attached as exhibits to the Berger Declaration (the "**Property**").  DAI acquired its claims against the Debtor on or about June 7, 2011 from the Debtor's original lender, Wells Fargo Bank, N.A. (successor by merger to the original lender and agent, Wachovia Bank, National Association.

6.      In accordance with an Agreement Regarding Certain Matters dated as of June 7, 2011 by and between DAI, the Debtor and CLA (the "**Supplemental Agreement**") a foreclosure sale of the Property in accordance with Article 9 of the Uniform Commercial Code in effect in the Commonwealth of Massachusetts was scheduled for June 30, 2011 (the "**Foreclosure Sale**").[1]  *See* Exhibit B attached hereto and incorporated by reference herein.  Upon information and belief, and as DAI expects will be demonstrated by a motion in support of this Stay Relief Motion that the Debtor will be filing contemporaneously with or shortly after the filing of this

---

[1] As described more fully in the Berger Declaration, upon acquiring the Debtor's secured debt, DAI exercised certain of the rights available to it under the applicable financing documents, including the right to accelerate the Debtor's obligations and the right to foreclose on the Debtor's equity interests and appoint new directors to the Debtor's board of directors.

motion, the acquisition of the Debtor's secured debt and the planned foreclosure sale by DAI were the product of an extensive marketing process designed and implemented by the Debtor, with the help of an independent investment banking firm, that was aimed at obtaining additional financing or a purchaser for the Debtor.

7.      In exchange for agreeing to a consensual foreclosure sale, pursuant to the Supplemental Agreement the Debtor obtained valuable concessions from DAI.  Most notably, DAI agreed to credit bid the full amount of its secured claim at the foreclosure sale, meaning, effectively, that it would waive its deficiency claim, which was likely to be substantial, if it was the successful bidder.  In addition, DAI agreed to release its lien on a tax refund owed to the Debtor, estimated to be worth approximately $3.5 million, freeing up proceeds for creditors who would otherwise likely receive nothing from the sale of the Debtor's assets due to the size of DAI's secured claim.

8.      On the eve of the Foreclosure Sale, June 29, 2011 (the "**Petition Date**"), NL Ventures VII United, L.L.C., La Vita, Inc., Your Label, Inc., and Surburban Service Corp. (collectively, the "**Petitioning Creditors**") initiated an involuntary petition against the Debtor under Chapter 7 of  the Bankruptcy Code.  Upon the filing of the involuntary petition, the automatic stay under § 362 of the Bankruptcy Code stayed the Foreclosure Sale.

9.      As of the Petition Date, the Debtor was indebted to DAI in the aggregate amount of $11.111 million.  This amount is well in excess of the liquidation value of the Property, which DAI believes is approximately $6.892 million.  *See* Exhibit 13 of the Berger Declaration.  Thus, as of the Petition Date, DAI was undersecured by approximately $4.218 million, an amount that continues to increase as DAI continues to fund the operations of the Debtor pending the outcome of this Stay Relief Motion.  As evidenced by the Berger Declaration and the exhibits thereto, as

well as the Debtor's Motion in Support of this Stay Relief Motion, the Debtor has absolutely no equity in the Property DAI is seeking Stay Relief to foreclose upon.[2]

10.     As of the date of the filing of this Stay Relief Motion, the Debtor has not been served with the involuntary petition nor has it filed any answer, opposition, or other responsive pleading to the involuntary petition and the Court has not yet granted any relief under Section 303 of the Bankruptcy Code.[3]

11.     DAI now moves this Court, on an expedited basis, for an order granting it relief from the automatic stay, so that it may exercise its rights and remedies under applicable law and the documents and agreements evidencing the secured debt against the Property, for purposes of, without limitation, consummating the previously scheduled foreclosure sale.

## ARGUMENT

**I.     DAI is Entitled to Stay Relief Because the Chapter 7 Debtor Has No Equity in the Property**

12.     DAI's state law and contractual right to foreclose on the property securing the Debtor's obligation is a key right of secured creditors—a right that bankruptcy only circumscribes in a limited fashion, under the constant tension of carefully balanced interests. *See In re Indian Palms Assocs. Ltd.*, 61 F.3d 197, 208 n.15 (3d Cir. 1995) (noting that "section 362(d)(2)(A) was intended to protect a creditor's right to foreclosure" and later, interpreting § 362(d)(2) in a manner that balances the secured creditors', unsecured creditors', and debtor's

---

[2] As indicated above, DAI understands from Debtor's counsel that the Debtor will be filing either simultaneously with or shortly thereafter the filing of this Stay Relief Motion, a motion in support of DAI's Stay Relief Motion and its request for an expedited hearing, that will include, among other things, further evidence and support of the arguments contained in this Stay Relief Motion, including Declarations of the CFO and CEO of the Debtor, as well as evidence supporting the necessity for the expedited relief requested by DAI.

[3] The filing of this Stay Relief Motion does not act as a waiver of DAI's right to challenge or otherwise oppose the involuntary Chapter 7 bankruptcy case against the Debtor.

interests); *In re Nat'l Real Estate Ltd. Partnership II*, 87 B.R. 986, 990 (Bankr. E.D. Wis. 1988) ("[T]here must be a balancing of the interests of the debtor with the interest of the secured creditor in its collateral.").

13.     Where a debtor has no equity in collateral and does not require the use of collateral for reorganization, there is no legitimate bankruptcy purpose to further restrict the state law rights of a secured creditor.  The Bankruptcy Code provides in relevant part: "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—   . . . (2) with respect to a stay of an act against property under subsection (a) of this section, if—(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2).  Such a secured creditor is entitled to stay relief under section 362(d)(2), and the Bankruptcy Code makes such stay relief *mandatory*.  *Indian Palms*, 61 F.3d at 208 ("Furthermore, we note that the language of section 362(d)(2) is mandatory, when both factors necessary for relief under section 362(d)(2) are met 'the court shall grant relief.'").

14.     The current outstanding debt owed to DAI is well in excess of the estimated liquidation value of the Property.  *See* Exhibit 13 of the Berger Declaration.  In short, DAI is woefully undersecured and the debtor does not possess any equity in the Property whatsoever. *See In re Aja*, 442 B.R. 857, 862 (1st Cir. BAP 2011) (stay relief movant bears burden of proof on the lack of equity in collateral).

15.     Furthermore, this is the only inquiry in this case that need be satisfied for stay relief.  As this Court has already held, property subject to a stay relief motion is presumptively "unnecessary for a reorganization" in a Chapter 7 case.  *See In re Vicente*, 446 B.R. 26, 32

(Bankr. D. Mass. 2011) (in granting stay relief, only the debtor's lack of equity was at issue as the case had converted from a Chapter 11 to a Chapter 7 case); *see also B.N. Realty Assocs. v. Lichtenstein*, 238 B.R. 249, 258 (S.D.N.Y. 1999) ("Since a Chapter 7 petition does not contemplate reorganization, the only issue in a Chapter 7 case under 362(d)(2) would be whether a [debtor possessed] equity in the property.") (alteration in original); *In re Diplomat Electronics Corp.*, 82 B.R. 688, 693 (Bankr. S.D.N.Y. 1988) ("In a chapter 7 case if there is no equity in the property sought to be foreclosed, the stay should be lifted because there can be no question that the property is not necessary for an effective reorganization."). Upon DAI's conclusive showing that the Debtor lacks equity in the Property, there is no need to proceed through an analysis of the likelihood of reorganization. Thus, DAI is entitled to stay relief in order to foreclose on the Property.

## II. An Expedited Determination of the Stay Relief Motion is Warranted Under the Circumstances

16.      Pursuant to M.L.B.R. 9013-1(g), DAI hereby requests expedited determination of the Stay Relief Motion. Expedited relief is necessary in order to preserve the Debtor's value as a going concern, which has and will continue to erode drastically each day that foreclosure of the Property is delayed.

17.      Because the liquidation value of the Property is well below the debt owed by the Debtor to WAG, the only way for DAI to recover even close to the value of its secured claim against the Debtor is to conduct a sale of the Debtor's business as a going concern. This requires, among other things, funding the Debtor's working capital needs which are significant. For example, in the past three weeks, DAI has advanced approximately $4 million to the Debtor to fund the Debtor's extraordinarily high operational costs (i.e. labor costs, property leases, etc.)

which are well beyond the current needs of the business and one of the primary reasons the Debtor is insolvent.

18.     To recover fair market value from the sale of the assets in an orderly fashion, the timeline to achieve the liquidation will need to be extended and the business would require additional weekly funding.  Based on average weekly funding requirements over the past three weeks of approximately $1.35 million of operating expenses (excluding inventory purchases but including salaries, benefits, catalog shipping costs, distribution center costs and call center costs), DAI estimates that over the 8 week period required for the business to sell inventory off at fair market value, it would cost approximately $10.8 million to operate the business, which would increase the balance due under the Senior Loan.  DAI believes such an approach could result in gross inventory recovery value of approximately $15.8 million, which is $11.4 million higher than the inventory value outlined in the liquidation analysis.  However, the net benefit of this orderly liquidation is $600K and is only impacted by a higher realized value from the sale of inventory as the value for the remaining assets would not be impacted.

19.     If the business is operated as a going concern, DAI believes a similar amount of funding (i.e. $10.8 million or more) will be required for a period of time before costs are rationalized, however, in the long run the business may be able to return back to profitability and thus generate a higher recovery on the additional capital invested by the senior lender than a liquidation would.

20.     A purchaser of the Debtor's assets in the context of a going-concern business would be able to realize higher value for the Debtor's assets because, as discussed above, certain assets only have value to a going concern business.  Such a purchaser would also be able to take

critical cost-cutting measures to, among other things, right-size the workforce and relocate its current facility to one more suitable for the needs of the business.

21.     Absent any immediate sale allowing for such a purchase, DAI's only choices are to continue to fund the Debtor's operations with the hope of a return (over time) of the amounts loaned to the Debtor or liquidating the Property.  Because DAI is guaranteed to incur substantial losses if it permits the Debtor to liquidate, it is temporarily continuing to fund the Debtor and hoping to realize higher value and minimize those losses.  However, each day that goes by where DAI is forced to continue funding the Debtor's business requires DAI to provide disproportionate and wasteful funding for which ultimate recovery by DAI is uncertain and increases the indebtedness owed by the Debtor.  For that reason, DAI is not likely to continue to finance the Debtor's operations if the foreclosure sale cannot proceed expeditiously.

22.     As DAI expects the Debtor's motion in support of this Stay Relief Motion to demonstrate, the Debtor's operations cannot continue without funding from DAI or the consummation of the planned foreclosure sale.  In that case, the Debtor's assets will have to be liquidated, and liquidation is likely to yield amounts far less than the amount of the secured debt held by DAI, leaving little to nothing for unsecured creditors.  Each day that passes makes that outcome more likely.

23.     By contrast, if the Court agrees to consider the Stay Relief Motion on an expedited basis, and, as DAI believes is appropriate, grants the Stay Relief Motion, the Debtor will realize the benefit of DAI's agreement to bid the full amount of its secured claim at the sale, thereby eliminating DAI's deficiency claim.  The Debtor's unsecured creditors will realize the benefit of DAI's agreement to release its lien on the Debtor's $3.5 million tax refund.  Finally, though no less significantly, the ability to preserve the Debtor's going concern value through the

foreclosure sale will inure to the benefit of the employees whose jobs would be preserved, who would have their positions terminated as the result of a liquidation.

24.     For those reasons, and the reasons set forth in the Berger Declaration submitted in support of the Stay Relief Motion, as well as the Debtor's Motion in Support of this Stay Relief Motion and the Declarations attached thereto, delaying consideration of this Stay Relief Motion would effectively pre-determine the outcome of this case before it begins, in a way that is detrimental to the Debtor, DAI and the unsecured creditors, even if DAI and the Debtors eventually succeed in demonstrating that the involuntary petition should be dismissed.

### MLBR 9013-1(g)(1)(C) Certification

25.     Undersigned counsel certify, in compliance with MLBR 9013-1(g)(1)(C), that on July 5, 2011, counsel to DAI, William S. McMahon, advised counsel to the Petitioning Creditors, Michael J. Goldberg, by telephone, that DAI intended to file this Stay Relief Motion (also describing the substance thereof) and intended to seek expedited determination thereof.  Upon information and belief, all other parties potentially affected by the relief sought herein had previously been made aware of the Stay Relief Motion.


*[Remainder of this page intentionally left blank]*

## <u>CONCLUSION</u>

For the foregoing reasons, DAI respectfully requests that this Court enter an Order,

substantially in the form attached hereto, vacating or lifting the automatic stay to permit DAI to

exercise its nonbankruptcy lien rights with respect to the Property, and for any other relief

deemed necessary by the Court.


Dated: July 5, 2011                                  Respectfully submitted,

                                                     /s/ William S. McMahon
                                                     Douglas R. Gooding (BBO No. 558976)
                                                     dgooding@choate.com
                                                     William S. McMahon (BBO No. 651832)
                                                     wmcmahon@choate.com
                                                     CHOATE HALL & STEWART LLP
                                                     Two International Place
                                                     Boston, MA 02110
                                                     (617) 248-5000

                                                     -and-

                                                     Alan Noskow
                                                     Erika Morabito
                                                     PATTON BOGGS LLP
                                                     2550 M Street, NW
                                                     Washington, DC 20037
                                                     (202) 457-5608

                                                     *Attorneys for Distinctive Apparel, Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| WOMEN'S APPAREL GROUP, LLC | Case No. 11-16217 (JNF) |
| Debtor. | (Involuntary) |

**ORDER GRANTING MOTION OF DISTINCTIVE APPAREL FOR
<u>RELIEF FROM THE AUTOMATIC STAY</u>**

This matter having come before the Court on the *Motion of Distinctive Apparel for Relief From the Automatic Stay* (the "**<u>Stay Relief Motion</u>**") filed by Distinctive Apparel, Inc. ("**<u>DAI</u>**"); the Court having considered all related motions and objections; notice of the Stay Relief Motion being good and sufficient notice under the circumstances; a hearing having been held before the Court; the Court having determined that the relief sought in the Stay Relief Motion is in the best interests of the Debtor, its estate, its creditors, and parties in interest; and it appearing from the record before the Court that sufficient cause exists for the entry of this Order (the "**<u>Order</u>**"); the Court

**HEREBY ORDERS** THAT:

1.      The Stay Relief Motion is GRANTED in its entirety, and

2.      DAI is hereby granted relief from the automatic stay to exercise its rights and remedies against the collateral securing the Debtor's indebtedness to DAI (the "**<u>Property</u>**") under applicable state and federal law, including without limitation, the rights and remedies to obtain possession of, foreclose on, hold for sale and otherwise dispose of the Property;

3.      Notwithstanding anything herein to the contrary, the entry of this Order is without

prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) DAI's right to seek

any other or supplemental relief with respect to the Women's Apparel Group, LLC, bankruptcy

case or any subsequent affiliated bankruptcy case; (b) DAI's right under the Bankruptcy Code or

applicable non-bankruptcy law to (i) request further modification of the automatic stay of section

362 of the Bankruptcy Code, or (ii) request the dismissal or conversion of any case; and (c) any

other rights, claims or privileges (whether legal, equitable, or otherwise) of DAI. The failure of

DAI to seek relief or otherwise exercise its rights and remedies under this Order, or applicable

law, shall not constitute a waiver of any of the rights of DAI hereunder, thereunder or otherwise;

and

4.      This Court has and will retain jurisdiction to enforce this Order according to its

terms.

BY THE COURT


_____

Honorable Joan N. Feeney
United States Bankruptcy Judge


Dated: July __, 2011