UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

_____

In re:                                              )
                                                    )
WOMEN'S APPAREL GROUP, LLC          )          Chapter 7 (Involuntary)
                                                    )          Case No. 11-16217 (JNF)
                             Debtor.             )
_____)

## MOTION OF WOMEN'S APPAEL GROUP, LLC IN SUPPORT OF MOTION OF DISTINTIVE APPAREL, INC. FOR RELIEF FROM THE AUTOMATIC STAY AND REQUEST FOR EXPEDITED DETERMINATOIN.

Women's Apparel Group, LLC ("WAG") moves by its attorneys, to support the Motion of Distinctive Apparel, Inc. ("DAI") For Relief from the Automatic Stay and Request for Expedited Determination as says in support:

1.  On June 29, 2011 (the "Petition Date"), NL Ventures VII United, L.L.C., La Vita, Inc., Your Label, Inc., and Suburban Service Corp. (collectively, the "Petitioning Creditors") initiated an involuntary petition against WAG under Chapter 7 of the Bankruptcy Code, alleging that they were due claims in excess of the amount provided in 11 U.S.C. §303(b) that were not contingent as to liability or the subject of a bona fide dispute as to liability or amount net of the value of any lien on property of the debtor securing such claims.

2.  Upon the filing of the involuntary petition, the automatic stay under § 362 of the Bankruptcy Code stayed the Foreclosure Sale.

1

3.      By filing this Motion in Support, the WAG does not concede that the Petitioning

Creditors have met their burden and reserves its right to file in opposition of the Involuntary

Petition.

4.      WAG further does not concede that the Petitioning Creditors have debts that meet

the threshold requirements of 11 U.S.C. §303(b).

5.      WAG believes that it has entered into arrangement with DAI that if allowed to go

forward would benefit both the unsecured creditors of WAG, the employees of WAG and would

allow for an orderly transition of the business of WAG.

6.      In support of this Motion, WAG has attached hereto as <u>Exhibit A</u>, is the declaration

of the Chief Executive Officer of WAG, Steven Lightman ("Lightman Declaration"), attached

hereto as <u>Exhibit B</u>, is the declaration of the Chief Financial Officer of WAG, Jeffrey Dubrow

("Dubrow Declaration") and attached hereto as <u>Exhibit C</u>, is the declaration of Kenneth T. Latz,

the Managing Director of Conway MacKenzie, Inc. ("Latz Declaration").

7.      Appended hereto as <u>Exhibit D</u> is the Declaration re: Electronic Filing of Steven

Lightman, appended hereto as <u>Exhibit E</u> is the Declaration re: Electronic Filing of Jeffrey

Dubrow and appended hereto as <u>Exhibit F</u> is the Declaration re: Electronic Filing of Kenneth T.

Latz.

8.      WAG is in the business of selling women's clothing and accessories through its web

site and mail order catalogs.

9.      WAG has suffered considerable financial difficulties over the last several years and

its sales have significantly declined (Lightman Declaration ¶4).

10. On an operational basis, WAG has been losing money and continues to lose money and is unable to continue its operations without significant outside support. (Dubrow Declaration ¶'s 4, 18 and 13).

11. WAG engaged Financo Securities LLC, who undertook an extensive process, including hiring the investment banker, having the investment banker approach a number of potential investors and sources of funding as provided in the Lightman Declaration ¶ 9.

12. WAG currently has senior secured debt obligations owing to DAI in excess of $11,000,000.

13. WAG determined that the only way that it could maximize value for its unsecured creditors and preserve as many jobs for its employees as was possible to enter its current arrangement with DAI as provided in the Lightman Declaration.

14. In order for the Board of Directors of WAG to fulfill its fiduciary duty to enter into the best transaction for the shareholders, the employees and WAG's creditors, it engaged Conway MacKenzie ("Conway") to prepare a liquidation analysis of the assets of WAG and a comparison of liquidation to the DAI arrangement. (Latz Declaration ¶11 )

15. Because of the nature of WAG's business, virtually all of its asset value is comprised of the inventory that it holds for sale (including returned inventory).

16. After due consideration of the report prepared by Conway, the Board of Directors of WAG accepted the DAI offer, which contained certain conditions designed to preserve the jobs of as many employees as possible and allow WAI to provide a significant dividend to its unsecured creditors.(Lightman Declaration ¶'s 10. 11 and 14)

17. DAI also agreed, following its acquisition of WAG's senior secured debt and until such time as it could conduct a foreclosure sale to provide interim financing so that WAG could

3

continue to meet its payroll expenses and other current expenses and could be sold as a going

concern. (Lightman Declaration ¶14 Dubrow Declaration ¶'s 8 and13)

18. Additionally, WAG negotiated conditions to the secured parties' sale that had to be

accepted by any potential bidder that would maximize the retention of jobs and ensure that there

would be funds available for distribution to unsecured creditors. (Lightman Declaration ¶14)

19. These conditions included the requirement that the successful bidder would retain a

certain number of employees, that DAI would credit bid its entire debt and eliminate any

deficiency, and that DAI release its lien on a tax refund owing to WAG that would be available

for distribution to WAG's unsecured creditors, all of the foregoing in addition to the provision of

additional loans to maintain the business, pay the employees and pay current expenses through

the foreclosure sale. (Lightman Declaration ¶14)

20. The arrangement to retain certain employees has allowed WAG to negotiate with its

union and potentially avoid a possible claim by employees under the WARN act, which would

added additional expenses and further dilute any dividend to unsecured creditors.

21. Upon information and belief, such negotiations have also resulted in an arrangement

which will provide for the continued employment of such union employees thereby preserving

jobs in Southeastern Massachusetts, an area hit particularly hard by the recent economic

downturn.

22. If the purpose of the Petitioning Creditors was to slow down a process of sale to

maximize recovery for unsecured creditors, their actions have had the opposite effect by

derailing a plan that would have eliminated any deficiency claim by the secured creditors,

retained jobs for employees, avoid a possible WARN Act Claim and allowed any tax refunds to

4

fund a plan to for unsecured creditors without the costs and expenses that the Involuntary

Petition has placed on the placed on WAG.

23.  DAI has agreed to honor its original agreement to bid its entire debt and not assert a

deficiency in any foreclosure sale of its first lien on the assets of WAG, but only if there is a

quick resolution and a UCC foreclosure sale on the conditions negotiated by WAG with DAI.

24. If this court does not provide expedited relief to DAI, there is no guaranty that DAI

will continue to fund the operations of WAG, forcing WAG to dismiss the rest of its work force

and effectively close its operations.  (Dubrow Declaration   ¶13)

25. In addition, WAG would be forced to liquidate its assets, which will result in a

significant deficiency claim owing to DAI which would entitle DAI to share in the proceeds that

will be available for distribution to unsecured creditors.

26.  Additionally, WAG as part of its decision to work with DAI and based on its own

experience (Dubrow Declaration ¶9) and  based upon the Conway orderly liquidation analysis set

out in the Latz Declaration and the Chart accompanying the Latz Declaration and based on

Conway's experience if the assets of WAG were sold at a forced liqudiation (Latz Declaration ¶

14) there is no equity to the estate of the alleged debtor in the collateral securing the secured

claims held by DAI.

27. The total amount of the debt due DAI is approximately $11,110,500 (Lightman

Declaration¶ 7) and the approximate net advanced to WAG by DAI to continue its operations is

approximately $5,100,000 (Dubrow Declaration ¶8)

28. The value of the inventory, much of which is seasonal in nature, will only decline if

there is any further delay in the sale of that inventory (Latz Dclaration ¶14).

29. If the court does not grant relief to DAI, DAI would have the right to assert its entire claim including any deficiency claim, including the net amount advanced to WAG by DAI to continue WAG's operations, in any sale of the assets of WAG other than the foreclosure sale negotiated with DAI.

30. Any delay in a secured party's sale by DAI would also increase the potential debt due to DAI secured by the assets of WAG due to advances made by DAI to continue the day to day operation of WAG in an attempt to preserve the going-concern value of WAG's business. (Dubrow Declaration ¶8).

31. Based on the forgoing, WAG believes that it is in the best interest of creditors and the employees of WAG to permit the DAI secured party's sale to go forward as quickly as possible.

32. The failure to allow the sale to go forward will deprive WAG of the benefits that WAG negotiated for its employees and creditors and will increase the dilution of all of the unsecured claims by the deficiency claim that will be asserted by DAI and any possible claims by union employees.

WHEREFORE, WAG respectfully requests that this court allow the relief requested by DAI in its Motion for Relief from the Automatic Stay and grant DAI's Request for Expedited Relief.

WOMEN'S APPAREL GROUP, LLC
By its counsel,
/s/ Richard S. Rosenstein
Richard S. Rosenstein (BBO #429100)
NUTTER, MCCLENNEN & FISH, LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2604
(617) 429-2000
rrosenstein@nutter.com

Dated: July 5, 2011

6

2026578

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| WOMEN'S APPAREL GROUP, LLC | ) | Chapter 7 (Involuntary) |
| | ) | Case No. 11-16217 (JNF) |
| Debtor. | ) | |
| | ) | |

## DECLARATION OF STEVEN LIGHTMAN

1.  My name is Steven Lightman. I am the Chief Executive Officer of Women's
Apparel Group, LLC d/b/a Boston Apparel Group, LLC. ("WAG"). I have been Chief Executive
Officer of WAG since January, 2011.

2.  This declaration is based upon my personal knowledge and experience.

3.  WAG is in the business of selling women's clothing and accessories through its
web site and mail order catalogs.

4.  WAG's business has been struggling for some time, as it has seen declining sales
over the past several years. In addition, WAG has been operating with significant debt
obligations.

5.  The debt obligations of WAG include debt under a Loan and Security Agreement,
originally dated as of October 17, 2008 (as amended, the "Senior Loan Agreement"). The initial
Senior Loan Agreement was executed on October 17, 2008 between WAG and Wachovia Bank,
National Association.

6.  WAG also borrowed funds under a Senior Secured Subordinated Promissory Note
dated February 11, 2010 (as amended, the "Sub Note"). Under the terms of the Sub Note, WAG

and a related business, Casual Living Acquisitions, LLC ("CLA"), borrowed funds from

Women's Apparel Group Finco, LLC ("Finco"), as the Lender. The original principal amount of

the Sub Note was $1,500,000.

7.      As of June 29, 2011, based upon my review of the books and records of WAG,

the total combined outstanding amount owed under the Senior Loan Agreement and Sub Note

was approximately $11, 110,500.00

8.      As the Chief Executive Officer, I am familiar with WAG's efforts over the past

several months to pursue additional sources of liquidity and to explore the potential sale of

WAG.

9.      In March, 2011, WAG retained the investment banking firm of Financo Securities

LLC to pursue sources of funding for WAG and/or potential buyers. No fewer than ninety-nine

entities were contacted by WAG and its representatives in this effort. Unfortunately, WAG was

unsuccessful in obtaining funding or a buyer through this process. During the same period of

time, WAG's sales continued to fall below forecasts, and the financial condition of WAG further

deteriorated.

10.     Because WAG was unable to obtain additional sources of liquidity or a buyer, and

because its financial condition continued to deteriorate, the Board of Directors and the sole

shareholder of WAG determined that it was in the best interest of all parties not to incur

additional debt but to sell the assets of WAG and wind down its affairs.

11.     The Board of Directors retained Conway MacKenzie, Inc. to perform a

liquidation analysis of WAG. The results of that analysis showed that the estimated orderly

liquidation value of WAG as of June 3, 2011, to be approximately $11, 659,000 after the

expenses of an orderly liquidation but prior to the payment of any secured debt.

2

12.    The orderly liquidation value of WAG included a possible $3,500,000 tax refund to WAG.

13.    Distinctive Apparel, Inc. ("DAI") purchased the Senior Debt and Sub Note and took an assignment of the collateral position under the Senior Debt and Sub Note on June 7, 2011.

14.    In connection with DAI's purchase of the Senior and Sub Note, DAI agreed to advance certain additional funds to ensure the stability of WAG and CLA.  These additional funds were used to : (i) pay WAG and CLA's liabilities to vendors that became payable in the ordinary course of business; (ii) pay personal property, sales, and use taxes that accrued or became payable in the ordinary course of WAG and CLA's business; (iii) make arrangements for WAG to pay certain accrued and unpaid wages, salaries, vacation, or other benefits owed to employees ; and (iv) ensure the continued employment of at least 120 of WAG's employees in the event that DAI was the successful bidder at a foreclosure sale to be conducted by the DAI on June 30, 2011.

15.    On June 30, 2011, DAI completed the foreclosure of its senior lien on the assets of CLA.

16.    The inventory of WAG that was included in the liquidation analysis as of June 3, 2011 included WAG inventory that has been sold since that date.  At present, I believe the liquidation value of WAG would be reduced by the impact of the sale of that inventory.  In addition, the sale at foreclosure of the personal property of CLA by DAI further reduces the liquidation value of WAG.

17.    WAG has continued to work with DAI, since the filing of this involuntary bankruptcy proceeding, to preserve the value of WAG as a going concern and to minimize the

3

impact that its bankruptcy will have on its employees, stakeholders, and the community. To that end, DAI has agreed to continue to advance funds to WAG to pay employees and continue its operations and DAI has released its first priority lien on a WAG tax refund claim that is estimated to be worth approximately $3.5 million, so that it can be made available to WAG's unsecured creditors.

18.    I have reviewed the Declaration of Kenneth Latz of Conway and of Jeffrey Dubrow the Chief Financial Officer of WAG that were filed contemporaneously with my Declaration and believe that the changes in inventory levels and the release of the lien by DAI on the tax refund have a significant impact on the orderly liquidation value and forced liquidation value of WAG's assets and that the proceeds of either an orderly or forced liquidation would be insufficient to repay the secured debt held by DAI.

Signed under the penalties of perjury this _06_ day of July, 2011.

Steven Lightman

2026470.2

4

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re: | ) |
| | ) |
| WOMEN'S APPAREL GROUP, LLC | ) Chapter 7 (Involuntary) |
| | ) Case No. 11-16217 (JNF) |
| Debtor. | ) |
| | ) |

## <u>DECLARATION OF JEFFREY DUBROW</u>

1.     My name Jeffrey Dubrow.  I am the Chief Financial Officer of Women's Apparel

Group, LLC d/b/a Boston Apparel Group. ("WAG").  I have been Chief Financial Officer of

WAG since April 28, 2011; prior to that date, I was the Vice President of Finance of WAG (from

October, 2010 through April 28, 2011) and Comptroller of WAG (from June, 2009 through

October, 2010).

2.     This declaration is based upon my personal knowledge and experience.

3.     WAG is in the business of selling women's clothing and accessories through its

web site and mail order catalogs.

4.     WAG has not had positive net income since the third fiscal quarter of 2008  and

has had losses in excess of $26,000,000, through May 30, 2011.

5.     I can confirm on my personal knowledge the facts set forth in the Declaration of

Steven Lightman as to the circumstances surrounding the Senior Loan Agreement and the

SubDebt Note (as such terms are defined in the Declaration of Steven Lightman).

6.     I can confirm on my personal knowledge the facts set forth in the Declaration of

Steven Lightman as to the process engaged by WAG in attempting to obtain financing and/or a

buyer for WAG as a going concern including, without limitation, the retention of an investment banking advisory firm and the submission of materials regarding WAG to approximately ninety-nine prospective interested parties.

7.    I have personal knowledge that the firm of ConwayMacKenzie prepared an orderly liquidation analysis for the Board of Directors of WAG in the spring of 2011. I assisted ConwayMacKenzie in those efforts, insofar as I provided data and guidance about WAG's past liquidations of inventory and the process by which WAG's inventory had been liquidated through catalogs and jobbers.

8.    I am personally familiar with the arrangements made by DAI to provide ongoing financing of the day-to-day operations of WAG of approximately $5,100,000 on a net basis over the last three weeks, until a foreclosure sale of the lien held by DAI securing the Senior Loan Agreement.

9.    I have been personally involved in accounting for and forecasting for WAG's past liquidation of inventory through various processes. In my experience, if WAG cannot sell its overstocked inventory through its own clearance catalogues and is forced to sell such inventory in bulk to so-called "jobbers", WAG realizes about an 18% of the net book value for such inventory, and the return on discontinued or slightly damaged returned products is normally around 10% - 12%.

10.    Based on my review of the books and records of WAG, I have prepared the attached chart of assets, that I have been informed by DAI, DAI has a lien upon.

11.    The inventory reserve on the attached chart reflect the normal and customary practice of WAG in setting reserve to overstocked, slow moving and out of season inventory and

2

estimating the reduction in value based on WAG's experience in liquidating such overstocked inventory.

     12.    Based on my review of the books and records of WAG, the current debt due to DAI, including protective advances made to finance the ongoing operations of WAG, is approximately $11,110,500,00.

     13.    Currently WAG is without means to continue its day to day operations without the continued financing from DAI, and if that financing ceases, WAG would be forced to lay off its entire workforce, cease operations and close its business.

     14.    If WAG were forced to cease operations and lay off its workforce, and liquidate its assets, I believe, based on my personal experience in prior liquidations of WAG's inventory, that the value of WAG's inventory would be substantially less than the value of WAG's inventory in an orderly liquidation, as set forth in the ConwayMacKenzie orderly valuation analysis.

Signed under the penalties of perjury this _____ day of July, 2011.

_____

Jeffrey Dubrow

3

## CHART OF BOOK VALUES

| Type of Asset | Current Book Value |
|---|---|
| Credit Card Accounts Receivable | $463,000 |
| Gross Inventory | $17,540,000 |
| Less: Inventory Reserves | ($6,872,000) |
| Net Inventory | $10,668,000 |
| Prepaid Expenses | $7,597,000<br>(as of the end of May 2011) |
| Property & Equipment, Net | $5,913,000 |
| Land | $175,000 |
| Trademarks | $4,241,000 |
| Customer Lists | $1,778,000 |
| Refund Customs Letter of Credit | $1,500,000 |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

In re:                              )
                                    )
WOMEN'S APPAREL GROUP, LLC          )    Chapter 7 (Involuntary)
                                    )    Case No. 11-16217 (JNF)
            Debtor.                 )
_____)

## DECLARATION OF KENNETH T. LATZ

1.  I am Kenneth T. Latz, a Managing Director of Conway MacKenzie, Inc. ("Conway MacKenzie"), a restructuring and financial advisory services firm that has been in existence since 1987.

2.  Conway MacKenzie regularly prepares analyses of the liquidation value of assets under various scenarios in the course of executing restructuring and financial advisory engagements on behalf of debtor and creditor constituencies related to companies operating across a wide spectrum of industries, including, without limitation, retail and consumer products.

3.  In the course of my career, I have been involved with multiple cases involving retailers and consumer products companies, including, without limitation, my role as the Chief Financial Officer of Spiegel Brands, Inc., a well-known direct-to-consumer retailer of women's apparel and competitor of Women's Apparel Group, LLC ("WAG" or the "Company"), from August 2008 through its restructuring in June 2009.

4.  On October 5, 2010 and through subsequent amendment on March 25, 2011, WAG engaged Conway MacKenzie to provide certain professional services, which included, among other things, the preparation of an orderly liquidation analysis of WAG's assets, in support of

WAG's evaluation of strategic alternatives, including possible sale and restructuring alternatives. I was the Managing Director with Conway MacKenzie for this engagement.

5. On June 3, 2011, Conway MacKenzie provided a report to WAG and its board of directors that set forth Conway MacKenzie's estimated orderly liquidation analysis of WAG's assets (the "CM Liquidation Analysis").

6. In preparing the CM Liquidation Analysis, Conway MacKenzie assumed that WAG's inventory would be liquidated primarily through the Company's catalog and internet channels and the residual sold in bulk, either at public auction or private sale.

7. The CM Liquidation Analysis included an analysis of the gross orderly liquidation value of WAG's inventory by brand (specifically, Chadwick's of Boston, Metrostyle and Casual Living) and by inventory classification (specifically, Spring/Summer 2011, Fall/Winter 2011, Clearance and Jobber) through the application of estimated recovery percentages representing necessary promotional discounts by brand and inventory classification.

8. Conway MacKenzie also estimated the gross orderly liquidation value of WAG's non-inventory assets by applying estimated discount percentages to each other class of assets owned by WAG.

9. Appended to this Declaration is a chart that sets forth the estimated discount rates Conway MacKenzie applied to each class of WAG's assets to determine the gross orderly liquidation recovery in the CM Liquidation Analysis.

10. Conway MacKenzie then estimated the amount of expenses that would be necessary to liquidate the Company's inventory and other assets over an estimated 10-week timeframe. Total liquidation expenses, which included advertising expenses (catalog production and circulation costs and internet marketing expenses), freight and duty expenses, payroll and related expenses,

other operating expenses (rent, utilities, call center, information technology and other items), professional fees and operating taxes (property and sales and use taxes), were estimated to be approximately $12,100,000 for purposes of the CM Liquidation Analysis (excluding approximately $400,000 of advertising expenses related to Casual Living).

11.   I have reviewed the Declaration of Steven Lightman and Jeffrey Dubrow of this date. As illustrated in the accompanying valuation chart, based solely on the application of the discount rates estimated by Conway MacKenzie for purposes of the CM Liquidation Analysis to the current book value of assets of WAG as set forth in the Declaration of Jeffrey Dubrow and the subtraction of approximately $12,100,000 of estimated operating expenses based on the CM Liquidation Analysis as described above, the orderly liquidation value of WAG's present assets would approximate $4,375,000.

12.   I note, however, that if Conway MacKenzie was to prepare an updated detailed liquidation analysis based on the current actual mix and level of inventory, our estimated recovery percentages and estimated liquidation expenses may differ from that which was assumed for purposes of the CM Liquidation Analysis.

13.   I further note that the class of assets comprising Income Tax Receivables consists of operating losses which could not be realized under any liquidation circumstances and a tax refund which has been released from the lien of the secured creditor. As such, that class of assets is not included for purposes of this Declaration or the accompanying chart.

14.   Finally, while the CM Liquidation Analysis was based on an orderly liquidation premise whereby the Company's inventory would be liquidated largely through WAG's primary catalog and internet channels, a forced liquidation premise would likely entail a broader or complete liquidation of the Company's inventory in bulk either through public auction or private sale.

Based on my experience in this case and in similar matters, I would anticipate that WAG's

inventory could be liquidated through a bulk sale at a recovery ranging from 10% and 20% of

book value.

Signed under the penalties of perjury this 6th day of July, 2011.

Kenneth T. Latz

2026623.2

**VALUATION CHART**

| Class of Assets | Gross Orderly Liquidation Recovery As a Percentage of Book Value From CM Liquidation Analysis | Value Applying Orderly Liquidation Percentages to Book Values Per Declaration of Jeffrey Dubrow |
|---|---|---|
| Credit Card Accounts Receivable | -46% (due to set offs) | ($200,000) |
| Inventory | 77% | $13,500,000 |
| Prepaid Expenses | 0% | $0 |
| Property & Equipment | 7% | $400,000 |
| Land | n/a | $175,000 |
| Trademarks | 12% | $500,000 |
| Customer List | 34% | $600,000 |
| Refund Customs Letter of Credit | 100% | $1,500,000 |
| Less: Liquidation Expenses Per Prior Conway MacKenzie Estimate | n/a | ($12,100,000) |
| Calculated Net Liquidation Value | n/a | $4,375,000 |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| WOMEN'S APPAREL GROUP, LLC | ) | Chapter 7 (Involuntary) |
| | ) | Case No. 11-16217 (JNF) |
| Debtor. | ) | |
| | ) | |

## DECLARATION RE: ELECTRONIC FILING

I,Steven Lightman, hereby declares under penalty of perjury that all of the information contained in the Declaration of Steven Lightman ( the "Document"), filed electronically, is true and correct. I understand that this DECLARATION is to be filed with the Clerk of Court electronically concurrently with the electronic filing of the Document. I understand that failure to file this DECLARATION may cause the Document to be struck and any request contained or relying thereon to be denied, without further notice.

I further understand that, pursuant to the Massachusetts Electronic Filing Local Rule (MEFR) 7(b), all paper documents containing original signatures executed under the penalties of perjury and filed electronically with the Court are the property of the bankruptcy estate and shall be maintained by the authorized CM/ECF Registered User for a period of five (5) years after the closing of this case.

Dated:July 6, 2011

_____
Steven Lightman

2027105.1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re: | ) |
| | ) |
| WOMEN'S APPAREL GROUP, LLC | )   Chapter 7 (Involuntary) |
| | )   Case No. 11-16217 (JNF) |
| Debtor. | ) |
| | ) |

## DECLARATION RE: ELECTRONIC FILING

I,Jeffrey Dubrow, hereby declares under penalty of perjury that all of the information contained in the Declaration of Jeffrey Dubrow ( the "Document"), filed electronically, is true and correct. I understand that this DECLARATION is to be filed with the Clerk of Court electronically concurrently with the electronic filing of the Document. I understand that failure to file this DECLARATION may cause the Document to be struck and any request contained or relying thereon to be denied, without further notice.

I further understand that, pursuant to the Massachusetts Electronic Filing Local Rule (MEFR) 7(b), all paper documents containing original signatures executed under the penalties of perjury and filed electronically with the Court are the property of the bankruptcy estate and shall be maintained by the authorized CM/ECF Registered User for a period of five (5) years after the closing of this case.

Dated:July 6, 2011

Jeffrey Dubrow

2027109.1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

In re:                                    )
                                          )
WOMEN'S APPAREL GROUP, LLC                )        Chapter 7 (Involuntary)
                                          )        Case No. 11-16217 (JNF)
            Debtor.                       )
_____)

## DECLARATION RE: ELECTRONIC FILING

I, Kenneth T. Latz, hereby declares under penalty of perjury that all of the information contained
in the Declaration of Kenneth T. Latz ( the "Document"), filed electronically, is true and correct.
I understand that this DECLARATION is to be filed with the Clerk of Court electronically
concurrently with the electronic filing of the Document. I understand that failure to file this
DECLARATION may cause the Document to be struck and any request contained or relying
thereon to be denied, without further notice.

I further understand that, pursuant to the Massachusetts Electronic Filing Local Rule (MEFR)
7(b), all paper documents containing original signatures executed under the penalties of perjury
and filed electronically with the Court are the property of the bankruptcy estate and shall be
maintained by the authorized CM/ECF Registered User for a period of five (5) years after the
closing of this case.

Dated: July 6, 2011

_____
Kenneth T. Latz

2027112.1