## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (Eastern Division)

| | |
|---|---|
| In re: | Chapter 7 (Involuntary) |
| WOMEN'S APPAREL GROUP, LLC | Case No. 11-16217 |
| Debtor. | |

**MOTION OF DEBTOR FOR (I) AUTHORIZATION TO (A) OBTAIN SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 364(c) AND (d); (B) GRANT SECURITY INTERESTS, SUPERPRIORITY CLAIMS AND ADEQUATE PROTECTION; AND (C) USE CASH COLLATERAL AND (II) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(C)**

*(Emergency Determination Requested)*

The above captioned debtor (the "**Debtor**"), respectfully represents:

### BANKRUPTCY RULE 4001 CONCISE STATEMENT

1.      By this motion (the "**Motion**"), the Debtor requests entry of interim (the "**Interim Order**") and final orders (the "**Final Order**," and together with the Interim Order, the "**DIP Orders**") (a) authorizing the Debtor pursuant to sections 363(c), 364(c) and 364(d) of title 11 of the United States Code §§ 101-1532 (the "**Bankruptcy Code**"), Rules 2002, 4001(c) and (d) and 9014 of the Federal Rules of Bankruptcy Procedure and MLBR Rule 4001-2 (the "**Bankruptcy Rules**"), inter alia, (i) to obtain post-petition financing (the "**Post-Petition Financing**") from Distinctive Apparel, Inc. (in such capacity, the "**DIP Lender**"), (ii) to grant DIP Lender, pursuant to section 364(c) and 364(d) of the Bankruptcy Code, first priority security interests in all of the Debtor's currently owned and after-acquired property to secure the Debtor's obligations under the Post-Petition Financing; and (iii) to grant the DIP Lender, priority in

2027976.2
2028366.1

payment with respect to the obligations incurred in connection with the Post-Petition Financing over any and all administrative expenses of the kinds specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 552 and 726 of the Bankruptcy Code, other than as described below; (b) authorizing the Debtor to use cash collateral within the meaning of section 363(a) of the Bankruptcy Code in accordance with the terms of the Post-Petition Financing described below (the "**Cash Collateral**"), pursuant to section 363(c) of the Bankruptcy Code and to provide adequate protection, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code; (c) scheduling a preliminary hearing on an Emergency basis as provided in MLBR 9013-1(h) (the "**Preliminary Hearing**") on the Motion to consider entry of an Interim Order pursuant to Bankruptcy Rule 4001 authorizing the Debtor to borrow under the Post-Petition Financing the amounts set forth in and limited by the Approved Budget (as defined in the Interim Order), upon the terms and conditions set forth in the Interim Order pending the Final Hearing referred to below; and (d) scheduling a final hearing (the "**Final Hearing**") to consider entry of the Final Order authorizing on a final basis, inter alia, the Post-Petition Financing and use of the Cash Collateral.  A copy of the proposed Interim Order is attached hereto as **Exhibit "A"**.

2.    The essential terms of the proposed use of Cash Collateral and Post-Petition Financing as reflected in the Interim Order are as follows:[1]

(a)    *Maximum Borrowing Available on a Revolving Basis through* August 29, 2011 - $12,000,000

(b)    *Borrowing Conditions*.  DIP Lender's advances of the Post-Petition Financing shall be pursuant to the same terms as the Pre-Petition Loan Documents (as defined below) as modified by the Interim Order (the Pre-Petition Loan

---

[1] In the event of any inconsistency between the terms of this paragraph 2 and the Interim Order and/or DIP Loan Documents, the provisions of the Interim Order shall govern and control.  All capitalized terms not otherwise defined herein shall have the meaning ascribed to said terms in the Interim Order.

2027976.2
2028366.1

Documents as modified by the Interim Order shall hereinafter be referred to as the "**DIP Loan Documents**"), without the need for further execution or documentation. The borrowing(s) made under the credit facility maintained under the DIP Loan Documents (the "**DIP Facility**") and all other indebtedness and obligations incurred on or after the Petition Date with respect to loans, advances and any other indebtedness or obligations, contingent or absolute, pursuant to the Interim Order and the DIP Loan Documents which may now or from time to time hereafter be owing by the Debtor to DIP Lender (including principal, accrued and unpaid interest, and fees, costs and expenses, including without limitation attorneys' fees and expenses) are referred to herein as the "**DIP Indebtedness**," and, together with the Pre-Petition Obligations (as defined herein), as the "**Indebtedness**." The Debtor and DIP Lender may enter into nonmaterial amendments of or modifications to the DIP Loan Documents and without the need of further notice and hearing or order of this Court. Interim Order ¶2.

(c)   *Interest Rate*. The Pre-Petition Obligations shall bear interest at the applicable default rate set forth in the applicable Pre-Petition Loan Documents. The DIP Indebtedness shall bear interest at the rate of ten percent (10%) per annum. Interim Order ¶5.

(d)   *Maturity* – August 29, 2011.

(e)   *Termination*. DIP Lender's agreement to provide the DIP Facility in accordance with the DIP Loan Documents and Pre-Petition Lender's consent to the use of the Cash Collateral shall immediately and automatically terminate (except as DIP Lender and/or Pre-Petition Lender may otherwise agree in writing in their sole discretion), and all Indebtedness shall be immediately due and payable in cash upon the earliest to occur of any of the events set forth in paragraph 6 of the Interim Order.

(f)   *Limitations on Use of Funds*. Debtor may use the proceeds of the DIP Facility exclusively to pay for the expenses incurred by Debtor as provided for in the Approved Budget. Debtor represents and warrants to the best of their knowledge that (a) the expenditures set forth in the Approved Budget constitute all of Debtor's projected expenses during the period of the Approved Budget, and (b) the Cash Collateral and the sums contemplated to be advanced by DIP Lender pursuant to the DIP Facility are sufficient to pay all of the expenses set forth in the Approved Budget. Interim Order ¶18(b).

(g)   *Value of Pre-Petition Collateral*. While the Debtor does not have an appraisal of the Pre-Petition Collateral the value of the Pre-Petition Collateral is substantially less that the outstanding amount of the pre-Petition Loan [***to be discussed***].

(h)   *Debt due to Pre-Petition Lender*. The total debt due to the Pre-Petition Lender on all of the Pre-Petition Obligations is approximately $11,001,387.57.

2027976.2
2028366.1

(i)    *Protections Afforded Under sections 363 and 364 of the Bankruptcy Code*. Interim Order ¶7, 8 and 10.

(j)    *Carve-Out*.  As set forth more fully in paragraph 31 hereof, the Interim Order provides for (a) the payment of any unpaid fees payable pursuant to 28 U.S.C. § 1930 (including, without limitation, fees under 28 U.S.C. § 1930(a)(6)), (b) the fees due to the Clerk of the Court and (c) the actual approved fees and expenses incurred by professionals retained by the Debtor and the reasonable expenses of individual members of any Committee and wages, for the period prior to the occurrence of a Termination Date. ¶16.

(k)    *Objections by Parties In Interest*.  Interim Order ¶27.

3.    The provisions described in Bankruptcy Rule 4001(b)(1)(B)(i)-(iv)  and MLBR

4001-2(a) are set forth at the following sections of the Interim Order:

(a)    *Name of Each Entity with Interest in Cash Collateral*.    Interim Order ¶(Introduction).

(b)    *Purposes of Use of Cash Collateral*.  Interim Order ¶18.

(c)    *Duration of Use of Cash Collateral*.  Interim Order ¶18.

(d)    *Liens, Cash Payments, or Other Adequate Protection to Be Provided to Each Entity with Interest in Cash Collateral*.  Interim Order ¶7-9.

4.    In addition, the provisions described in Bankruptcy Rule 4001(c)(l)(B)(i)- (xi)

MLBR 4001-2(a) are set forth at the following sections of the Interim Order:

(a)    *Grant of Priority or a Lien on Property of the Estate*.  Interim Order ¶7-10.

(b)    *Adequate Protection or Priority for a Claim that Arose Before the Commencement of the Case, Including the Granting of a Lien on Property of the Estate to Secure the Claim, or the Use of Property of the Estate or Credit Obtained Under Section 364 to Make Cash Payments on Account of the Claim*. Interim Order ¶4, 8 and 9.

(c)    *Determination of the Validity, Enforceability, Priority, or Amount of a Claim that Arose Before the Commencement of the Case, Subject to the Rights of a Creditors' Committee or Other Parties in Interest*.  Interim Order ¶F, 25, 27.

(d)    *Waiver or Modification of the Automatic Stay*.  Interim Order ¶4, 15.

(e)    *Release, Waiver, or Limitation on any Claim or Cause of Action Belonging to the Estate*.  Interim Order ¶6, 12 and 25.

2027976.2
2028366.1

    (f)     *Indemnification of Any Entity.*  Interim Order ¶ N/A.

    (g)     *Release, Waiver, or Limitation on Rights under Section 506(c) Under Final Order.*  Interim Order ¶13.

    (h)     *Liens Granted on Claims Arising Under Chapter 5.*  Interim Order ¶7,8.

### Status of the Case and Jurisdiction

5.     On June 29, 2011 (the "**Petition Date**"), NL Ventures VII United, L.L.C., La Vita, Inc., Your Label, Inc., and Suburban Service Corp. (collectively, the "**Petitioning Creditors**") initiated an involuntary petition against the Debtor under Chapter 7 of the Bankruptcy Code, alleging that they were due claims in excess of the amount provided in 11 U.S.C. §303(b) that were not contingent as to liability or the subject of a bona fide dispute as to liability or amount net of  the value of any lien on property of the debtor securing such claims.

6.     On June 30, 2011, the Bankruptcy Court entered an order limiting the ability of the Debtor to convey assets other than in conformity with 11 U.S.C. §363.

7.     On this date, and notwithstanding the Debtor's opposition to the Petitioning Creditors alleged due claims, which the Debtor reserves its right to object to, the Debtor has filed a motion for entry of an order for relief (the "**Order for Relief**") and to convert this case to Chapter 11.

8.     The Debtor has continued in possession of its properties and is operating and managing its businesses as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.     No request has been made for the appointment of a trustee or examiner, and a creditors' committee (a "**Committee**") has not yet been appointed in the Case.

2027976.2
2028366.1

10.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

11.    The statutory and legal predicates for the relief sought herein are sections 361, 363(c), 364(c) and 364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c) and (d) and 9014 and MLBR 4001-2 and 9013-1.

## Background

12.    Debtor is in the business of selling women's clothing and accessories through its web site and mail order catalogs and operates its business from a location at 300 Constitution Drive, Taunton, Massachusetts.

## RELIEF REQUESTED

13.    The Debtor requests that the Court authorize the Debtor to obtain senior secured, superpriority post-petition financing in the aggregate not to exceed $12,000,000 outstanding at any one time pursuant to the terms of this Motion, the DIP Loan Documents, and the DIP Orders.

14.    The Debtor requests that the Court make a determination of and enter the Interim Order and grant Emergency Relief under MLBR 9013-1(h) for the reasons stated in this Motion.

15.    The proposed financing will be provided by the DIP Lender and will be, as set forth below, senior in priority to all secured claims except for the obligations under the Pre-Petition Loan Documents (defined below).  As such, the liens created under the DIP Loan Documents are priming liens with respect any other liens other than the Pre-Petition Liens (as defined below).

16.    Pending entry of the Final Order, the Debtor requests that the Court authorize the Debtor, on an interim basis on an Emergency basis, to (i) borrow up to $12,000,000 pursuant to the terms of the Interim Order; (ii) use Cash Collateral as provided in the Interim Order;

-6-

(iii) grant to the DIP Lender the liens and superpriority claims described herein; (iv) provide adequate protection to Pre-Petition Lender (as defined below), as described herein and in the Interim Order; (v) approve the proposed notice of the Final Hearing; and (vi) schedule the Final Hearing.

## Funding of the Debtor's Operations

### A.    The Pre-Petition Loan Documents

17.    Prior to the Petition Date, certain loans and other financial accommodations were made available to the Debtor pursuant to (i) that certain Loan and Security Agreement dated as of October 17, 2008 among (as amended from time to time, the "**Pre-Petition Loan Agreement**") among the Debtor, Casual Living Acquisition, LLC, a Massachusetts limited liability company ("**CLA**") and Women's Apparel Marketing Group, LLC, a Massachusetts limited liability company ("**WAG Marketing**"; together with CLA and Debtor, collectively the "**Pre-Petition Borrowers**") and Distinctive Apparel, Inc., a Delaware corporation (in such capacity, the "**Pre-Petition Lender**") as the successor in interest to Wells Fargo Bank, National Association (successor by merger to Wachovia Bank, National Association) and (ii) to all documents and/or instruments entered into in connection therewith to which Pre-Petition Lender and the Pre-Petition Borrowers are parties, as applicable, (each as amended, supplemented or otherwise modified prior to the commencement of this Case, collectively the "**Pre-Petition Loan Documents**").  Such documents have been filed with the Court and are available upon request. Events of default have occurred and are continuing under the Pre-Petition Loan Documents.  As a result of such events of default, interest is accruing at the default rate in accordance with Section 1.77(b) of the Pre-Petition Loan Agreement.

18.    Pursuant to the Pre-Petition Loan Documents, all obligations of the Debtor to Pre-Petition Lender of any kind or nature under the Pre-Petition Loan Documents (the "**Pre-Petition**

2027976.2
2028366.1

**Obligations**") are secured by a first priority security interest held by Pre-Petition Lender (the "**Pre-Petition Liens**") in substantially all of the Debtor's assets including, <u>without</u> <u>limitation</u>, and by way of general description only, accounts, intellectual property, real property and fixtures, inventory, equipment, goods, general intangibles, accounts receivable, deposit accounts (including without limitation bank accounts and all funds on deposit therein), chattel paper, general intangibles, contracts, letter of credit rights, commercial tort claims, if any, stock, documents of title, tangible and intangible personal and investment property, money, cash and all cash equivalents, and all cash held as cash collateral, books and records, all supporting obligations, and the proceeds and products of all of the foregoing as more particularly included and described in the Pre-Petition Loan Documents (the "**Pre-Petition Collateral**").

19.    In addition, all collections of accounts receivable and proceeds from the sale of inventory, which are obtained primarily through credit card payments, are paid into lock box accounts (the "**Lock Box Accounts**") at Wells Fargo Bank, National Association (the "**Bank**") and then paid directly by the Bank to the Pre-Petition Lender to reduce the interest and then principal due under the Pre-Petition Loan Documents.

<u>**Debtor's Proposed Postpetition Financing Arrangement**</u>

**A.    Need for Postpetition Financing**

20.    The Debtor has determined, with the assistance of its professionals, that it requires post-petition financing.  More specifically, given the Debtor's current financial condition and the sweep of all payments for pre-petition accounts receivable through the Lock Box and the transfer of those proceeds to the Pre-Petition Lender, the Debtor is unable to operate and has no access to its Cash Collateral.

21.    The Debtor is unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  Financing on a post-petition basis is not

-8-

otherwise available without the Debtor granting, pursuant to section 364(c)(i) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code and securing such indebtedness and obligations with the security interests in and the liens upon the property described below pursuant to sections 364(c)(2), (3) and 364(d) of the Bankruptcy Code and provide the DIP Lender with the proceeds of the payments received in the Lock Box to reduce any outstanding Post-Petition Financing and request additional loans under the DIP Loan Documents.

**B.      Background of the Postpetition Financing Arrangement**

22.      In exploring its options, the Debtor recognized that the Pre-Petition Obligations owed to Pre-Petition Lender are secured by virtually all of the Debtor's property, such that either (i) the Pre-Petition Liens would have to be primed to obtain post-petition financing; (ii) the post-petition lender would be required to refinance the obligations of Pre-Petition Lender in full and provide additional loan availability; or (iii) the Debtor would have to find a post-petition lender willing to extend credit that would be junior to the Pre-Petition Liens.

23.      After consultation with its advisors, the Debtor has determined, in the exercise of its sound business judgment, that the proposed DIP Facility with the DIP Lender is the only financing option available to the Debtor under the circumstances.  The proposed terms of the DIP Facility are fair, reasonable, and adequate under the circumstances.  Moreover, given the fact that the Debtor would be forced to cease all operations without post-petition financing the Debtor will not be able to find any other potential lender willing to provide an adequate stand-alone financing facility unless Pre-Petition Lender consented to the priming of the Pre-Petition Liens, which it will not do, or provide financing sufficient to repay obligations under the Pre-Petition Loan Documents in full and provide additional adequate liquidity sufficient to fund the Debtor's bankruptcy.

-9-

2027976.2
2028366.1

24.     Against this backdrop, the Debtor, with the assistance of its advisors, carefully evaluated the proposed financing structure from the DIP Lender.   Eventually, the Debtor determined in its business judgment that the DIP Lender's proposal was the best, fairest, and at the present time only proposal suited to the Debtor's needs and agreed to the terms of the DIP Facility.  In particular, the Debtor concluded that adequate alternative financing on terms more favorable than those being provided by the DIP Lender under the DIP Facility is currently unavailable.

**D.      Liens to Secure the DIP Indebtedness**

25.     As security for the DIP Indebtedness, the DIP Lender, shall be granted the following security and liens (the "**DIP Facility Liens**") in all currently owned or hereafter acquired property and assets of the Debtor of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising and all proceeds, products, rents and profits thereof, including, without limitation, all cash, goods, accounts receivable, inventory, cash in advance deposits, general intangibles, goodwill, investment property (including, without limitation, ownership interests in corporations, partnerships, and limited liability companies), deposit accounts, real estate, intellectual property, machinery, leasehold interests, equipment, tax assets, vehicles, trademarks, trade names, licenses, the Pre-Petition Collateral, causes of action including actions for preferences, fraudulent conveyances, and other avoidance power claims and any recoveries under sections 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code (collectively, "**Avoidance Actions**") and actions and recoveries thereon against third parties, commercial tort claims and insurance proceeds, and the proceeds, products, rents and profits of all of the foregoing (all of the foregoing, the "**DIP Facility Collateral**"), subject only to, in the event of the termination of the DIP Facility, the payment of the Carve-Out (as defined in paragraph 29):

-10-

*(a)*     Pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected first priority senior security interest in the DIP Facility Collateral, whether existing on the Petition Date or thereafter acquired, that, as of the Petition Date, is not subject to valid, perfected and non-avoidable liens;

*(b)*     Pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected security interest in and lien upon the DIP Facility Collateral, whether existing on the Petition Date or thereafter acquired, that is subject to valid, perfected and unavoidable liens in existence as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date, with a priority that relates back to a date prior to the Petition Date, as permitted by section 546(b) of the Bankruptcy Code (herein "**546(b) Liens**"), immediately junior in priority to such valid, perfected and unavoidable liens;

*(c)*     Pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected first priority senior priming lien (the "**Priming Liens**") on all of the DIP Facility Collateral, including the Pre-Petition Collateral, which shall be senior to all other security interests and liens in property of the Debtor's estates except for (i) Permitted Liens (as defined below), and (ii) the Pre-Petition Liens; and

*(d)*     In addition, except to the extent otherwise expressly set forth in the Interim Order, or in a written instrument, agreement or other document executed by the DIP Lender and subject to paragraph 7 of the Interim Order, neither the Pre-Petition Liens nor the DIP Facility Liens shall be subject to subordination to any other liens, security interests or claims under section 510 of the Bankruptcy Code, or otherwise.

26.     In addition, the Debtor will direct the Bank to pay over to the DIP Lender, to be applied against the interest and principal due under the Post-Petition Financing, all collections received in the Lock Box Accounts on account of sales of inventory purchased with the proceeds of Post-Petition Financing.

**E.     Use of Cash Collateral and Proposed Adequate Protection**

27.     As described above the Debtor makes most of its sales through credit card payments that are paid into the Lock Box Accounts and are subsequently paid to the Pre-Petition Lender. Therefore the Debtor does not have access to any of the Pre-Petition Lenders' cash collateral (the "**Cash Collateral**"). The Debtor proposes to grant the Pre-Petition Lender adequate protection by directing that all payments received in the Lock Box Accounts relating to

either sales arising prior to the date of entry of the Order for Relief or any sales of inventory that was purchased by the Debtor prior to the entry of the Order for Relief, all such purchases being made solely from the proceeds of Pre-Petition Loans and from no other funds of the Debtor, be paid over to the Pre-Petition Lender as adequate protection payments that may be applied to the Pre-Petition Obligations in accordance with 11 U.S.C. §361 and 11 U.S.C. §363.

28.    To the extent that the Debtor generates Cash Collateral from the sale of inventory purchased after the date of the entry of the Order for Relief that exceeds the amount of the DIP Indebtedness outstanding at any time, the Pre-Petition Lender has consented to the Debtor's use of such Cash Collateral subject to and in accordance with the Approved Budget, provided, however, that the DIP Lender shall retain its lien on such post-petition Cash Collateral.

29.    Pre-Petition Lender requested and is entitled, pursuant to sections 361, 363 and 552(b) of the Bankruptcy Code, to adequate protection of the Pre-Petition Collateral to the extent that there is a diminution in the value of such Pre-Petition Collateral from and after the Petition Date. As adequate protection for any such diminution in value, Pre-Petition Lender, shall be granted pursuant to sections 361, 363, and 552 of the Bankruptcy Code, valid, binding, enforceable and perfected additional and replacement liens (the "**Adequate Protection Liens**") in all property of the Debtor's estates, including the DIP Facility Collateral, to the extent of any decrease in the value of the Pre-Petition Collateral occurring subsequent to the Petition Date, with such decrease in value to include decreases resulting from the Debtor's use (if any) of Cash Collateral, the depreciation, use, sale, loss, decline in value or market price of the Pre-Petition Collateral, or otherwise. The Adequate Protection Liens shall enjoy the same validity and extent as the Pre-Petition Liens. The Adequate Protection Liens are subject only to (i) existing liens and encumbrances that were senior to those of Pre-Petition Lender as of the Filing Date under

2027976.2
2028366.1

applicable non-bankruptcy law, and which are valid, binding, enforceable, perfected and non-avoidable liens existing in the Pre-Petition Collateral as of the Petition Date[2] (the "**Permitted Liens**"), other than the Pre-Petition Liens; and (ii) the Carve-Out.

30.     If, notwithstanding the provision of the Adequate Protection Liens, such Adequate Protection Liens do not provide adequate protection of Pre-Petition Lender's interests in the Pre-Petition Collateral, Pre-Petition Lender shall (i) have a claim allowed under sections 507(a)(2) and 507(b) of the Bankruptcy Code (the "**507(b) Claim**"), and, except with respect to being subordinated to the Carve-Out, such 507(b) Claim shall be entitled to priority over every other claim allowable under such section 507(a)(2) of the Bankruptcy Code; and (ii) notwithstanding anything herein to the contrary, be entitled to seek further adequate protection of its interests and such further relief as is consistent therewith.

31.     In addition to the Adequate Protection Liens, the Debtor proposes to grant and/or pay Pre-Petition Lender the following, among other things, as adequate protection:

   *(a)*     repayment of the principal amount of the Pre-Petition Obligations in accordance with the DIP Order; and

   *(b)*     payments in the amount of interest, fees, costs and expenses with respect to the Pre-Petition Obligations in accordance with the DIP Order.

32.     The foregoing claims are to be granted and the payments are to be made to Pre-Petition Lender because, among other things, the Debtor will continue to use the Cash Collateral and other Pre-Petition Collateral in the Debtor's ongoing operations and to make payments to the DIP Lender as provided above.

**F.     Carve-Out**

---

[2] The Debtor represents and warrants that, other than encumbrances permitted under Section 9.8 of the Pre-Petition Loan Agreement, there are no other liens or security interests encumbering the Pre-Petition Collateral.

2027976.2
2028366.1

33.    The DIP Facility Liens, the Superpriority Claims, 507(b) Claim and the Adequate

Protection Liens are subordinate only to the following:  (a) the payment of any unpaid fees

payable pursuant to 28 U.S.C. § 1930 (including, without limitation, fees under 28 U.S.C.

§ 1930(a)(6)), (b) the fees due to the Clerk of the Court, (c) actual and approved fees and

expenses paid to any professionals retained by the Committee, retained by an order of the Court

entered pursuant to Sections 327 or 1103(b) of the Bankruptcy Code, and the expenses of

individual members of any Committee, for the period prior to the occurrence of a Termination

Date, provided they are within the amounts on a cumulative basis for any period covered by the

Approved Budget and are subsequently allowed by the Bankruptcy Court under sections 330 and

331 of the Bankruptcy Code, and (d) wages and amounts due to employees for periods prior to

the Termination Date as set forth in the Approved Budget (items collectively in clauses (a)

through (d) above, collectively, the "**Carve-Out**").   In addition to Carve-Out, the Adequate

Protection Liens, the DIP Facility Liens, the Superpriority Claims and the 507(b) Claim shall

also be subject to any Court approved Break Up Fee due and owing to the Buyer (as such terms

are defined in the Purchase Agreement) pursuant to the terms of that certain Agreement of

Purchase and Sale Agreement between the Buyer and the Debtor that the Debtor anticipates

filing shortly after the filing of this Motion (the "**Purchase Agreement**"), which Break Up Fee

shall be paid to the Buyer by the Debtor as and when due under the Purchase Agreement.  Upon

the occurrence of a Termination Date that is not waived by the DIP Lender and Pre-Petition

Lender, DIP Lender shall fund the Carve-Out within seven (7) days after being provided with a

notice or notices setting forth the amount of accrued and unpaid fees and costs allowable under

the Approved Budget and this Order, together with supporting documentation for such amounts

(the "**Carve-Out Funding**").  The portion of the Carve-Out Funding due to professionals will be

2027976.2
2028366.1

funded directly to the professionals upon submission of the order approving the fees of such professionals. Subject to the foregoing, the rights of the professionals to the Carve-Out or such lesser amounts as may be allowed by the Bankruptcy Court, shall be senior to the rights of DIP Lender to such funds. Any Carve-Outs funded by DIP Lender shall be deemed advances under the DIP Facility.

## G.    Objections by Parties in Interest

34.    Except as set forth herein and in the Interim Order, all of the provisions of the Interim Order shall be final and binding on the Debtor (including, without limitation, its successors and assigns), the Debtor's shareholders, and all creditors and other parties in interest, including any Chapter 11 or Chapter 7 trustee hereinafter appointed. The Committee and any party-in-interest with requisite standing (other than the Debtor) shall have up until August 12, 2011 (the "**Investigation Period**"), to file, on behalf of the Debtor's estates, and to serve upon counsel for the Pre-Petition Lender, an adversary complaint respecting (a) the claims, causes of actions and defenses released by the Debtor pursuant to paragraph 25 of the Interim Order or (b) the validity, extent, priority, avoidability, or enforceability of the Pre-Petition Obligations, the Pre-Petition Liens in the Pre-Petition Collateral, including seeking to subordinate any liens or claims of Pre-Petition Lender under section 510 of the Bankruptcy Code or otherwise. In the event that no adversary complaint is filed by the Committee or other parties-in-interest and served upon counsel for the Pre-Petition Lender within the time period set forth above, the provisions of the Interim Order and the Debtor's Stipulations in the Interim Order shall become final and binding for all purposes and upon all parties.

2027976.2
2028366.1

## BASIS FOR RELIEF REQUESTED

### Emergency Determination of the Interim Order Should Be Granted

35.    As set forth above in this Motion, the Debtor has no way of paying its on going expenses, including compensation for over 200 permanent and temporary employees, without the Post-Petition Financing being allowed.

36.    The Debtor needs the Court to enter the Interim Order in order to effectuate any further financing.

37.    The Debtor will have to close its doors and lay off its entire workforce to the detriment of its creditors and the estate without the Post-Petition Financing.

38.    The Post-Petition Lender will not advance any funds without entry of the Interim Order.

39.    The Debtor respectfully represents to the Court that there is adequate basis to provide Emergency Relief as provided in MLBR 9013-1(h) in order to preserve the value of the Debtor for the benefit of its creditors.

### The DIP Facility Should Be Authorized

40.    Approval of the DIP Facility will provide the Debtor with immediate and ongoing access to borrowing availability to fund its Case and to proceed with the Auction.  The Debtor needs access to the DIP Facility in order to preserve the value of its assets and to maximize value for their creditors.  Accordingly, the timely approval of the relief requested herein is imperative.

41.    Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(l) of the Bankruptcy Code, the court may authorize the debtor to obtain credit or incur debt (a) with priority over any and all administrative expenses, as specified in section 503(b) or 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the estate

-16-

2027976.2
2028366.1

that is not otherwise subject to a lien, or (c) secured by a junior lien on property of the estate that is subject to a lien. 11 U.S.C. § 364. The Debtor proposes to obtain the financing set forth in the DIP Orders and the DIP Loan Documents by providing, inter alia, superpriority claims, security interests, and liens pursuant to section 364(c)(l), (2), (3) and section 364(d) of the Bankruptcy Code.

42.     The Debtor's liquidity needs can be satisfied only if the Debtor's are immediately authorized to borrow under the DIP Facility and to use such proceeds to fund operations. The Debtor has been unable to procure sufficient financing in the form of unsecured credit allowable under section 503(b)(l), as an administrative expense under section 364(a) or (b), or in exchange for the grant of a superpriority administrative expense claim pursuant to section 364(c)(l). The Debtor has not been able to obtain post-petition financing or other financial accommodations from any alternative prospective lender or group of lenders on more favorable terms and conditions than those for which approval is sought herein.

43.     Bankruptcy courts grant a debtor considerable deference in acting in accordance with its business judgment. *See, e.g., Bray v. Shenandoah Fed. Say. & Loan Assn. (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dept Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest"); see also In re Funding Sys. Asset Mgmt. Corp., 72 B.R. 87 (Bankr. W.D. Pa. 1987); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *In re Simasko Prod.* Co., 47 B.R.

444, 449 (D. Colo. 1985).     **[INSERT RELEVANT AUTHORITY FOR MASS, IF APPLICABLE to come]**

44.     Furthermore, section 364(d) does not require that a debtor seek alternative financing from every possible lender; rather, the debtor simply must demonstrate sufficient efforts to obtain financing without the need to grant a senior lien.  *In re Snowshoe Co.*, 789 F.2 1085, 1088 (4th Cir. 1986) (demonstrating that credit was unavailable absent the senior lien by establishment of unsuccessful contact with other financial institutions in the geographic area); *In re 495 Central Park Ave, Co.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (debtor testified to numerous failed attempts to procure financing from various sources, explaining that "most lend money only in return for a senior secured position"); *In re Aqua Assocs.*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991 (debtor adequately established that some degree of priming of loan was necessary if debtor were to obtain funding).

45.     Substantially all of the Debtor's assets are encumbered and the Debtor has been unable to procure the required funding absent granting the proposed superpriority claims and liens.  The Debtor submits that the circumstances of this case require the Debtor to obtain financing pursuant to section 364(c) and section 364(d) of the Bankruptcy Code and, accordingly, the DIP Orders and the DIP Loan Documents reflect the exercise of their sound business judgment.

46.     The terms and conditions of the DIP Loan Documents are fair and reasonable, and were negotiated by well-represented, independent parties in good faith and at arms' length.  Accordingly, the DIP Lender and all obligations incurred under the DIP Loan Documents should be accorded the benefits of section 364(e) of the Bankruptcy Code.

2027976.2
2028366.1

## The Application of Cash Collateral Should Be Approved

47.    Under section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use ... in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). The Debtor requires the use of Cash Collateral to fund their bankruptcy cases and to proceed with the Auction. Indeed, absent such relief, the Debtor will be unable to preserve the value of the Assets, with damaging consequences for the Debtor and their estates and creditors. The interests of Pre-Petition Lender in the Debtor's Cash Collateral will be protected by the adequate protection set forth above. Pre-Petition Lender has consented to the use of the Cash Collateral on the terms set forth herein and in the Order. Accordingly, the Court should approve the Debtor's request to use Cash Collateral as provided above and as provided in the Interim Order to provide adequate protection for the Pre-Petition Lender and provide for the repayment and re-advancing of loans under the DIP Loan Documents.

## Section 364(e) Protections

48.    The terms and conditions of the DIP Orders are fair and reasonable, and were negotiated by well-represented, independent parties in good faith and at arms' length. Accordingly, DIP Lender and Pre-Petition Lender and all obligations incurred under the DIP Orders should be accorded the benefits of section 364(e) of the Bankruptcy Code.

## The Proposed Adequate Protection Should Be Authorized

49.    Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used . . . by [a debtor in possession], the court, with or without a hearing, shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Section 361 of the

-19-

Bankruptcy Code delineates the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens, and other forms of relief.  11 U.S.C. § 361.  What constitutes adequate protection must be decided on a case-by-case basis.  *See In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985); *In re Shaw Indus., Inc.*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003).  The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use.  *See In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (internal citation omitted).

50.    Pre-Petition Lender has agreed to the Debtor's using Cash Collateral arising from sales of inventory purchased using the proceeds of the Post-Petition Financing that occur after the date hereof and the Debtor's entry into the DIP Loan Documents in consideration for the adequate protection provided under the DIP Loan Documents.  Accordingly, the adequate protection proposed herein to protect Pre-Petition Lender's interest in the Pre-Petition Collateral is fair and reasonable and sufficient to satisfy the requirements of sections 363(c)(2) and (e) of the Bankruptcy Code.

### The Automatic Stay Should Be Modified on a Limited Basis

51.    The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtor to (i) grant the security interests, liens, and superpriority claims described above with respect to the DIP Lender and Pre-Petition Lender, as the case may be, and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens; and (iii) implement the terms of the proposed DIP Orders.

2027976.2
2028366.1

52.     Stay modifications of this kind are ordinary and standard features of post-petition debtor financing facilities and, in the Debtor's business judgment, are reasonable and fair under the present circumstances.

**Interim Approval Should Be Granted**

53.     Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral or obtain credit, respectively, may not be commenced earlier than fourteen (14) days after the service of such motion.  Upon request, however, the Court is empowered provide Emergency Determination at a preliminary hearing on the motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

54.     As provided above the Debtor has grounds for Emergency Relief under MLBR 90013(h).

55.     The Debtor has an urgent and immediate need for cash to continue to operate. Currently, the Debtor does not have sufficient funds with which to fund its bankruptcy and protect and maintain the value of the Assets.  Absent authorization from the Court to obtain secured credit, as requested, on an interim basis pending a final hearing on the motion, the Debtor will be immediately and irreparably harmed.  The interim relief requested is critical to facilitating the Debtor's reorganization efforts.

56.     The Debtor further submits that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

57.     To successfully implement the foregoing, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay under Bankruptcy Rule 6004(h).

2027976.2
2028366.1

## NOTICE

58.    Notice of this Motion has been provided to (i) the Office of the United States Trustee; (ii) the parties included on the Debtor's list of twenty (20) creditors holding the largest unsecured claims on a consolidated basis; (iii) counsel for the Debtor's prepetition and post-petition lenders; and (iv) those parties requesting notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

59.    No prior motion for the relief requested herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter the proposed Interim Order, substantially in the form attached hereto as Exhibit A:  (A) authorizing the Debtor to obtain the Post-Petition Financing; (B) scheduling the Final Hearing to consider entry of the Final Order authorizing on a final basis, inter alia, the Post-Petition Financing and use of the Cash Collateral; and (C) ) granting related relief.

2027976.2
2028366.1

WOMEN'S APPAREL GROUP, LLC
By its counsel,
/s/ Richard S. Rosenstein
Richard S. Rosenstein (BBO #429100)
NUTTER, MCCLENNEN & FISH, LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2604
(617) 429-2000
rrosenstein@nutter.com

Dated:  July 12, 2011

2028366.1