## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (Eastern Division)

| | |
|---|---|
| In re: | Chapter 7 (Involuntary) |
| WOMEN'S APPAREL GROUP, LLC | Case No. 11-16217 |
| Debtor. | |

## INTERIM ORDER (I) AUTHORIZING (A) SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 364(c) AND (d); (B) GRANTING SECURITY INTERESTS, SUPERPRIORITY CLAIMS AND ADEQUATE PROTECTION; AND (C) USE OF CASH COLLATERAL AND (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(C)

Upon the motion dated July 11, 2011 (the "**DIP Motion**"), of above-captioned Debtor and Debtor-in-possession (collectively, the "**Debtor**") for the entry of an order pursuant to sections 363(c), 364(c) and 364(d) of title 11 of the United States Code §§ 101-1532 (the "**Bankruptcy Code**"), Rules 2002, 4001(c) and (d) and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and MLBR Rule 4001-2, requesting entry of an order (A) authorizing the Debtor to obtain post-petition financing (the "**Post-Petition Financing**") pursuant to the terms of the DIP Loan Documents (as defined below) from Distinctive Apparel, Inc. (in such capacity, the "**DIP Lender**"), (ii) to grant the DIP Lender, pursuant to sections 364(c) and 364(d) of the Bankruptcy Code, first priority security interests, as hereinafter set forth, in all of the Debtor's currently owned and after-acquired property to secure the Debtor's obligations under the Post-Petition Financing; and (iii) to grant the DIP Lender priority in payment with respect to the obligations incurred in connection with the Post-Petition Financing over any and all administrative expenses of the kinds specified in sections 105, 326, 328, 330,

1

331, 503(b), 506(c), 507(a), 507(b), 552 and 726 of the Bankruptcy Code, other than as described below; (b) seeking this Court's authorization to use Pre-Petition Lender's (as hereinafter defined) cash collateral within the meaning of section 363(a) of the Bankruptcy Code in accordance with the terms of the Post-Petition Financing described below (the "**Cash Collateral**"), pursuant to section 363(c) of the Bankruptcy Code and to provide adequate protection, pursuant to sections 361 and 363(e) of the Bankruptcy Code; (c) seeking a preliminary hearing on an emergency basis as provided in MLBR 9013-1(h) (the "**Preliminary Hearing**") on the DIP Motion to consider entry of an interim order pursuant to Bankruptcy Rule 4001 (the "**Order**") authorizing the Debtor to borrow under the Post-Petition Financing the amounts set forth in and limited by the Approved Budget (as defined below), upon the terms and conditions set forth in this Order pending the Final Hearing referred to below; and (d) requesting that a final hearing (the "**Final Hearing**") be scheduled by this Court to consider entry of a final order (the "**Final Order**") authorizing on a final basis, inter alia, the Post-Petition Financing and use of the Cash Collateral; and due and sufficient notice of the DIP Motion under the circumstances having been given; and the Preliminary Hearing on the DIP Motion having been held before this Court; and upon the entire record made at the Preliminary Hearing; and this Court having found good and sufficient cause appearing therefor;

IT IS HEREBY FOUND ON AN INTERIM BASIS:

A.     Unless otherwise indicated herein, all capitalized terms used but not defined herein shall have the meanings given in the Pre-Petition Loan Agreement (as hereafter defined).

B.     On June 29, 2011 (the "**Petition Date**"), NL Ventures VII United, L.L.C., La Vita, Inc., Your Label, Inc., and Suburban Service Corp. (collectively, the "**Petitioning Creditors**") initiated an involuntary petition against Debtor under Chapter 7 of the Bankruptcy

610724

Code, alleging that they were due claims in excess of the amount provided in 11 U.S.C. §303(b) that were not contingent as to liability or the subject of a bona fide dispute as to liability or amount net of the value of any lien on property of the debtor securing such claims.

C.    On June 30, 2011, the Bankruptcy Court entered an order limiting the ability of Debtor to convey assets other than in conformity with 11 U.S.C. §363.

D.    On this date, and in addition to the DIP Motion, the Debtor has filed a motion for entry of an order for relief (the "**Order for Relief**") seeking to convert this case to one under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**").

E.    Having found good cause to do so, the Bankruptcy Court entered the Order for Relief and allowed the conversion of this case to one under Chapter 11.

F.    The Debtor has continued in possession of its properties and is operating and managing its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

G.    No request has been made for the appointment of a trustee or examiner, and a creditors' committee (a "**Committee**") has not yet been appointed in this Chapter 11 Case.

H.    This Court has jurisdiction over the Chapter 11 Case and the DIP Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the DIP Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue for this Chapter 11 Case and this DIP Motion is proper under 28 U.S.C. §§ 1408 and 1409.

I.    Prior to the Petition Date, certain loans and other financial accommodations were made available to the Debtor pursuant to (i) that certain Loan and Security Agreement dated as of October 17, 2008 among (as amended from time to time, the "**Pre-Petition Loan Agreement**") among the Debtor, Casual Living Acquisition, LLC, a Massachusetts limited

610724

liability company ("**CLA**") and Women's Apparel Marketing Group, LLC, a Massachusetts limited liability company ("**WAG Marketing**"; together with CLA and Debtor, collectively the "**Pre-Petition Borrowers**") and Distinctive Apparel, Inc., a Delaware corporation (in such capacity, the "**Pre-Petition Lender**") and the successor in interest to Wells Fargo Bank, National Association (successor by merger to Wachovia Bank, National Association) and (ii) to all documents and/or instruments entered into in connection therewith to which Pre-Petition Lender and the Pre-Petition Borrowers are parties, as applicable, (each as amended, supplemented or otherwise modified prior to the commencement of this Case, collectively the "**Pre-Petition Loan Documents**"). Events of default have occurred and are continuing under the Pre-Petition Loan Documents. As a result of such events of default, interest is accruing at the default rate in accordance with Section 1.77(b) of the Pre-Petition Loan Agreement.

J.     Without prejudice to the rights of the Committee that may be appointed (but subject to the limitations described in ordering paragraph 25 below), pursuant to the Pre-Petition Loan Documents, all obligations of the Debtor to Pre-Petition Lender of any kind or nature under the Pre-Petition Loan Documents are secured by a first priority security interest held by the Pre-Petition Lender (the "**Pre-Petition Liens**") in substantially all of the Debtor's assets including, without limitation, and by way of general description only, accounts, intellectual property, real property and fixtures, inventory, equipment, goods, general intangibles, accounts receivable, deposit accounts (including without limitation bank accounts and all funds on deposit therein), chattel paper, general intangibles, contracts, letter of credit rights, commercial tort claims, if any, stock, documents of title, tangible and intangible personal and investment property, money, cash and all cash equivalents, and all cash held as cash collateral, books and records, all supporting

610724

obligations, and the proceeds and products of all of the foregoing as more particularly included and described in the Pre-Petition Loan Documents (the "**Pre-Petition Collateral**").

K.    Without prejudice to the rights of the Committee that may be appointed (but subject to the limitations described in ordering paragraph 25 below), the Debtor represents, stipulates, admits and agree that the Debtor is truly and justly indebted to Pre-Petition Lender under the Pre-Petition Loan Documents, without defense, counterclaim or offset of any kind, and that as of July 11, 2011 such liability to Pre-Petition Lender was, including interest, in the aggregate amount of approximately (but not less than) $11,551,387.57 with respect to the Pre-Petition Loan Documents (plus attorneys' fees, costs, expenses, and fees, including default fees, unpaid thereon) (the "**Pre-Petition Obligations**").   As of the Petition Date, the Debtor, in consideration of the Post-Petition Financing and the use of the Cash Collateral to be made available under the terms of this Order and the Final Order, waives and releases any and all causes of action, claims, obligations, suits, judgments, damages, demands, debts, rights, and liabilities, however arising, including without limitation whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event or other occurrence, against Pre-Petition Lender and each of its direct and indirect shareholders, subsidiaries, affiliates, members, managers, officers, directors, employees, attorneys, agents, representatives, predecessors, assigns and successors.   The provisions of this paragraph K constitute a stipulation by the Debtor and shall become a finding by the Court, subject to the provisions of ordering paragraph 25 of this Order.   *The provisions of this Paragraph K vary from the requirements of MLBR 4001-2(c).*

610724

L.     Without prejudice to the rights of the Committee (but subject to the limitations described in ordering paragraph 25 below), the Debtor further represents, stipulates, admits and agree that, by reason of the Pre-Petition Loan Documents, (i) the Pre-Petition Obligations are secured by the Pre-Petition Liens which are legal, valid, binding, properly perfected, enforceable and non-avoidable liens and security interests granted by the Debtor to the Pre-Petition Lender, upon and in all of the Pre-Petition Collateral, and (ii) the Pre-Petition Liens securing the Pre-Petition Obligations are senior to all other security interests in the Pre-Petition Collateral subject only to any Permitted Liens (as defined in paragraph 8 below).  The provisions of this paragraph L constitute a stipulation by the Debtor and shall become a finding of the Court, subject to the provisions of ordering paragraph 25 of this Order. *The provisions of this Paragraph L vary from the requirements of MLBR 4001-2(c).*

M.     All or substantially all collections of accounts receivable and proceeds from the sale of inventory, which are obtained primarily through credit card payments, are paid into lock box accounts (the "**Lock Box Accounts**") at Wells Fargo Bank, National Association (the "**Bank**") and then paid directly by the Bank to the Pre-Petition Lender to reduce the interest and then principal due under the Pre-Petition Loan Documents.

N.     Given the Debtor's current financial condition and the sweep of all payments for pre-petition accounts receivable through the Lock Box and the transfer of those proceeds to the Pre-Petition Lender, the Debtor is unable to operate and has no access to its Cash Collateral. Moreover, the Debtor is unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  Financing on a post-petition basis is not otherwise available without the Debtor granting, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in

610724

sections 503(b) and 507(b) of the Bankruptcy Code and securing such indebtedness and obligations with the security interests in and the liens upon the property described below pursuant to sections 364(c) and 364(d) of the Bankruptcy Code and providing the DIP Lender with the proceeds of the payments received in the Lock Box as adequate protection.

O.      Notice of the Preliminary Hearing and the relief requested in the DIP Motion has been given to (i) the Office of the United States Trustee for the District of Massachusetts, Eastern Division, (ii) the creditors holding the 20 largest unsecured claims against the Debtor; and (iii) known holders of pre-petition liens against the Debtor's property.

P.      Based on the record presented to this Court by the Debtor, it appears that the Post-Petition Financing and use of Cash Collateral have been negotiated in good faith and at arm's length among the Debtor and Distinctive Apparel, Inc., in its capacity as both the Pre-Petition Lender and the DIP Lender, and any credit extended and loans made to the Debtor by the DIP Lender pursuant to this Order shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of, section 364(e) of the Bankruptcy Code and Distinctive Apparel, Inc., as the DIP Lender and Pre-Petition Lender, shall have all of the protections thereunder.

Q.      Based on the record before this Court, it appears that the terms of this Order, including, without limitation, the terms of the Post-Petition Financing and use of Cash Collateral, are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

R.      The Debtor has requested immediate entry of this Order. The permission granted herein to use Cash Collateral and obtain the Post-Petition Financing and obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtor. This Court concludes that

610724

entry of this Order is in the best interests of the Debtor's estate and creditors as its implementation will, among other things, enhance the Debtor's prospects for a successful completion of the Chapter 11 Case.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Preliminary Hearing, and the undersigned consents of the Debtor, the DIP Lender and Pre-Petition Lender, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED DETERMINED AND DECREED that:**

1.     Motion Granted. The DIP Motion is granted on an interim basis, on the terms and conditions set forth in this Order, with the foregoing findings incorporated herein by reference. Any objections to the DIP Motion that have not previously been withdrawn or resolved are hereby overruled.  This Order shall be valid and binding on all parties-in-interest and fully effective immediately upon entry; provided, however, that all objections of any party-in-interest to this Order, to the extent that the terms thereof (i) purport to bind the Debtor or any other party-in-interest after the period covered by this Order, or (ii) are incorporated in any final order on the DIP Motion, are expressly reserved..

2.     Authorization. The Debtor is expressly authorized and empowered to (i) obtain the Post-Petition Financing, use the Cash Collateral, and perform its obligations strictly pursuant to the provisions of this Order; (ii) perform its obligations under the Pre-Petition Loan Documents as such documents are, or may be, amended and modified pursuant to the terms of this Order; and (iii) enter into such other agreements, instruments and documents as may be necessary or required to evidence the obligations to the Pre-Petition Lender and/or DIP Lender to consummate the terms and provisions of the DIP Motion and this Order and to evidence perfection of the liens and security interests to be given to the DIP Lender, including any

610724

amendment to the Pre-Petition Loan Documents necessary to give effect to the terms of the DIP Facility (as defined below) as required by the DIP Lender and/or Pre-Petition Lender (the Pre-Petition Loan Documents as modified by this Order shall hereinafter be referred to as the "**DIP Loan Documents**").   DIP Lender's advances of the Post-Petition Financing shall be pursuant to the same terms as the Pre-Petition Loan Documents, as modified by this Order, without the need for further execution or documentation, and all advances and borrowings shall be in accordance with the Pre-Petition Loan Agreement and the other Pre-Petition Loan Documents (except to the extent set forth in paragraph 20 below).   The borrowing(s) made under the credit facility maintained under the DIP Loan Documents (the "**DIP Facility**") and all other indebtedness and obligations incurred on or after the Petition Date with respect to loans, advances and any other indebtedness or obligations, contingent or absolute, pursuant to this Order and the DIP Loan Documents which may now or from time to time hereafter be owing by the Debtor to DIP Lender (including principal, accrued and unpaid interest, and fees costs and expenses, including without limitation attorneys' fees and expenses) are referred to herein as the "**DIP Indebtedness**," and, together with the Pre-Petition Obligations, as the "**Indebtedness**."   The Debtor and the DIP Lender may enter into nonmaterial amendments of or modifications to the DIP Loan Documents without the need of further notice and hearing or order of this Court; provided, however, notice of such nonmaterial amendments or modifications to the DIP Loan Documents shall be given to the United States Trustee and counsel for the Committee, should one be appointed.

3.      <u>Borrowing; Use of Cash Collateral</u>.   Subject to the Approved Budgets (as defined in paragraph 18(a) below) and solely in compliance therewith and subject further to the terms and conditions of this Order and the DIP Loan Documents, (a) Pre-Petition Lender hereby consents to the Debtor's limited use of Cash Collateral, and (b) DIP Lender will provide the DIP

610724

Facility in accordance with the terms of the DIP Loan Documents, which such DIP Facility shall include protective advances under the DIP Loan Documents in the amounts set forth in the Approved Budgets.   DIP Lender shall have no obligation or responsibility to monitor the Debtor's use of the Post-Petition Financing and may rely upon the Debtor's representations that the amount of borrowing under the DIP Facility requested at any time, and the use thereof, are in accordance with the requirements of this Order, the DIP Loan Documents and Bankruptcy Rule 4001(c)(2).

      4.    <u>Application of Proceeds.</u>

      (a)    During the pendency of this Order, proceeds or payments received in the Lock Box Accounts relating to either sales arising prior to the date of entry of the order for relief or any sales of inventory that was purchased by the Debtor prior to the entry of the Order for Relief shall be paid to the Pre-Petition Lender as adequate protection payments that may be applied to the Pre-Petition Obligations in accordance with 11 U.S.C. §361 and 11 U.S.C. §363.

      (b)    During the pendency of this Order, proceeds from the sale of inventory purchased after the date of the entry of the Order for Relief received in the Lock Box Accounts shall be paid to the DIP Lender and applied to reduce the outstanding balance of the DIP Facility

      (c)    If the source of any such proceeds or payments is not clearly identifiable as attributable to the Pre-Petition Collateral or the DIP Facility Collateral, such proceeds or payments shall be deemed to be proceeds from the Pre-Petition Collateral.

      (d)    To the extent that the Debtor generates Cash Collateral from the sale of inventory purchased after the date of the entry of the Order for Relief that exceeds the amount of the DIP Indebtedness outstanding at any time, the Pre-Petition Lender has consented to the

610724

Debtor's use of such Cash Collateral subject to and in accordance with the Approved Budget, provided, however, that the DIP Lender shall retain its lien on such post-petition Cash Collateral.

(e)      The automatic stay under section 362(a) of the Bankruptcy Code shall be, and it hereby is, modified to the extent necessary to permit the Pre-Petition Lender and/or DIP Lender to retrieve, collect and apply payments and proceeds in respect of the Pre-Petition Collateral and the DIP Facility Collateral (defined in paragraph 7 below) in accordance with the terms and provisions of this Order and the DIP Loan Documents.

5.      <u>Interest, Fees, Costs and Expenses</u>.  The Pre-Petition Obligations shall bear interest at the applicable default rates set forth in the Pre-Petition Loan Documents.  The DIP Indebtedness shall bear interest at rate of ten percent (10%) per annum.  In consideration for providing the DIP Facility, the Debtor shall pay to DIP Lender:  (i) an origination fee in the aggregate amount of $50,000 (the "**DIP Commitment Fee**"), which such DIP Commitment Fee is fully-earned and non-refundable as of the date hereof and (ii) a collateral monitoring fee in the amount of $3,000 per week beginning on the week in which this Interim Order is entered.  DIP Lender and Pre-Petition Lender shall be entitled to recover all of their reasonable attorneys' fees and other professional fees as well as costs and expenses incurred in connection with the Indebtedness and this proceeding. *The provisions of this Paragraph 5 vary from the requirements of MLBR 4001-2(c).*

6.      <u>Termination of the DIP Facility and Use of Cash Collateral</u>.  Except with respect to the payment of the Carve-Out (as defined in paragraph 16), the DIP Lender's agreement to provide the DIP Facility in accordance with the DIP Loan Documents and Pre-Petition Lender's consent to the use of the Cash Collateral shall immediately and automatically terminate (except as DIP Lender and/or Pre-Petition Lender may otherwise agree in writing in their sole

610724

discretion), and all Indebtedness shall be immediately due and payable in cash upon the earliest

to occur of any of the following (each, a **"Termination Date"**):

(i)    Three (3) Business Days following the Final Hearing Date (as defined below) if a Final Order (as defined below) has not been entered by July 27, 2011;

(ii)    the date of final indefeasible payment and satisfaction in full in cash of the Indebtedness;

(iii)    the consummation of the Sale of the Acquired Assets (as those terms are defined in the Debtor's Motion, Pursuant to Sections 105(a) and 363(b) and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rules 2002-1 and 6004-1, Requesting Entry of Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of Substantially all of the Debtor's Assets Outside the Ordinary Course of Business; (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Interests and Encumbrances; and (C) Granting Related Relief ("the **Sale Motion**") Docket No. [___];

(iv)    the occurrence of any breach by the Debtor of this Order (including, but not limited to, the Debtor's failure to adhere to the Approved Budgets as set forth in ordering paragraph 18(a) of this Order or violation of any of the covenants provided for in ordering paragraph 20 of this Order) or the Final Order, or under any of the DIP Loan Documents;

(v)    the bringing of a motion by Debtor to obtain additional financing from a party other than DIP Lender under section 364 of the Bankruptcy Code unless the proceeds from such financing are used to immediately repay in full and in cash the DIP Indebtedness or unless such financing is subordinate to the DIP Indebtedness and consented to in writing by DIP Lender and Pre-Petition Lender *(the provisions of this Paragraph 6(v) vary from the requirements of MLBR 4001-2(c))*;

(vi)    the dismissal of the Chapter 11 Case or the conversion of the Chapter 11 Case into a case under chapter 7 of the Bankruptcy Code;

(vii)    upon and following the entry of an order authorizing the appointment in the Debtor's Chapter 11 Case of a trustee or an examiner with enlarged powers (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code), relating to the operation of the business of the Debtor without the prior written

610724

consent of the DIP Lender and Pre-Petition Lender (which consent may be withheld, or, if given revoked, by the DIP Lender and Pre-Petition Lender in their sole discretion), or if Debtor applies for, consents to, or acquiesces in, any such appointment without the prior written consent of the DIP Lender and Pre-Petition Lender (which consent may be withheld in their sole discretion);

(viii)    this Order or the Final Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the DIP Lender and Pre-Petition Lender (which consent may be withheld in their sole discretion);

(ix)    the Court enters an order granting a party relief from the automatic stay with respect to any portion of the Pre-Petition Collateral or the DIP Facility Collateral provided that the value of the relevant collateral is more than $25,000.00;

(x)    the Debtor, any party-in-interest (including the Committee) or person shall attempt to obtain, or this or any other Court enters, an order or judgment in the Chapter 11 Case modifying, limiting, subordinating or avoiding the priority of the Indebtedness, or the perfection, priority or validity of the Pre-Petition Lender's Pre-Petition or DIP Facility Liens or imposing, surcharging or assessing against the DIP Lender and/or Pre-Petition Lender or their claims or any Pre-Petition Collateral or DIP Facility Collateral any fees, costs or expenses, whether pursuant to section 506(c) of the Bankruptcy Code or otherwise; provided, however, that the investigation undertaken during the Investigation Period (as defined below) shall not constitute a Termination Date; *(the provisions of this Paragraph 6(x) vary from the requirements of MLBR 4001-2(c))*;

(xi)    any action is commenced by the Debtor, any party-in-interest (including the Committee) or person that contests any provisions of the DIP Orders or the Pre-Petition Loan Documents, or asserts any claim or cause of action of any kind against the DIP Lender and/or Pre-Petition Lender; provided, however, that the investigation undertaken during the Investigation Period (as defined below) shall not constitute a Termination Date *(the provisions of this Paragraph 6(xi) vary from the requirements of MLBR 4001-2(c))*;

(xii)    if the Court has not entered an order establishing procedures relating to the conducting of an auction in connection with the Sale of the Assets (as those terms are defined in the Sale Motion) which procedures are acceptable to the DIP Lender and Pre-Petition Lender and permit DIP Lender and Pre-Petition Lender (or their

610724

designee) to credit bid the Pre-Petition Obligations and the DIP Indebtedness, without condition, by July 25, 2011;

(xiii)  if an Auction for the Sale of the Assets (as those terms are defined in the Sale Motion) has not been held by August 26, 2011;

(xiv)  if the Court has not entered an order approving the Sale of the Assets (as those terms are defined in the Sale Motion) by August 29, 2011;

(xv)  if the Debtor files, join in, or fail to oppose a motion contesting the ability of DIP Lender and/or Pre-Petition Lender (or their designee) to credit bid the amount of the Pre-Petition Obligations and/or DIP Indebtedness pursuant to section 363(k) of the Bankruptcy Code *(the provisions of this Paragraph 6(xv) vary from the requirements of MLBR 4001-2(c))*;

(xvi)  if the Debtor does not cooperate in the disclosure of information reasonably requested by DIP Lender and/or Pre-Petition Lender or any consultant retained by DIP Lender and/or Pre-Petition Lender;

(xvii)  if the Debtor fails to comply with the covenants set forth in this Order, including without limitation the covenants pertaining to the Approved Budget; or

(xviii)  any "**Event of Default**" under any of the DIP Loan Documents occurring after the Petition Date, without regard for any grace or cure periods or any notice requirements;

7.    <u>Liens to Secure the DIP Indebtedness</u>. As security for the DIP Indebtedness, the DIP Lender is hereby granted the following security and liens (the "**DIP Facility Liens**") in all currently owned or hereafter acquired property and assets of the Debtor of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising and all proceeds, products, rents and profits thereof, including, without limitation, (A) all cash, goods, accounts receivable, inventory, cash in advance deposits, real property, general intangibles, goodwill, investment property (including, without limitation, ownership interests in corporations, partnerships, and limited liability companies), deposit accounts, real estate, intellectual property, machinery, leasehold interests, equipment, tax assets

610724

(except for that certain tax refund owed to the Debtor in the approximate amount of $3,500,000 (the "**Tax Refund**"), which Tax Refund is expressly excluded from the DIP Facility Collateral, as defined below), vehicles, trademarks, trade names, licenses, the Pre-Petition Collateral, and (B) actions and recoveries thereon against third parties (except for actions for preferences, fraudulent conveyances, and other avoidance power claims and any recoveries under sections 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and the proceeds thereof (the "**Avoidance Actions**," and together with the Tax Refund, the "**Excluded Assets**") which are expressly excluded from the DIP Facility Collateral), commercial tort claims and insurance proceeds, and the proceeds, products, rents and profits of all of the foregoing (all of the foregoing, the "**DIP Facility Collateral**"), subject only to, in the event of the termination of the DIP Facility, the payment of the Carve-Out (as defined in paragraph 16):

(a)    Pursuant to Section 364(c)(2) of the Bankruptcy Code, a perfected first priority senior security interest in and lien upon the DIP Facility Collateral, whether existing on the Petition Date or thereafter acquired, that, as of the Petition Date, is not subject to valid, perfected and non-avoidable liens;

(b)    Pursuant to Section 364(c)(3) of the Bankruptcy Code, a perfected security interest in and lien upon the DIP Facility Collateral, whether existing on the Petition Date or thereafter acquired, that is subject to valid, perfected and unavoidable liens in existence as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date, with a priority that relates back to a date prior to the Petition Date, that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code ("**546(b) Liens**"), immediately junior in priority to such valid, perfected and unavoidable liens;

610724

(c)    Pursuant to Section 364(d)(1) of the Bankruptcy Code, a perfected first priority senior priming lien (the "**Priming Liens**") on all of the DIP Facility Collateral, including the Pre-Petition Collateral, which shall be senior to all other security interests and liens in property of the Debtor's estates except for (i) Permitted Liens (as defined in paragraph 8 below), and (ii) the Pre-Petition Liens;

(d)    In addition, except to the extent otherwise expressly set forth in this Order, or in a written instrument, agreement or other document executed by the DIP Lender and Pre-Petition Lender and subject to the entry of a Final Order, neither the Pre-Petition Liens nor the DIP Facility Liens nor the Adequate Protection Liens (defined in paragraph 8 below) shall be subject to subordination to any other liens, security interests or claims under section 510 of the Bankruptcy Code, or otherwise. Any security interest or lien upon the Pre-Petition Collateral or the DIP Facility Collateral which is avoided or otherwise preserved for the benefit of the Debtor's estates under Section 551 of the Bankruptcy Code or any other provision of the Bankruptcy Code shall be subordinate to the Pre-Petition Liens, the DIP Facility Liens and the Adequate Protection Liens (defined in paragraph 8 below). No lien or security interest granted to the DIP Lender, including without limitation the DIP Facility Liens, shall be subordinated to or made pari passu with any other lien or security interest under section 364(d) of the Bankruptcy Code. *The provisions of this Paragraph 7 vary from the requirements of MLBR 4001-2(c).*

8.    <u>Adequate Protection Liens</u>. As adequate protection of Pre-Petition Lender's liens on interests in the Pre-Petition Collateral, including use of the Cash Collateral, pursuant to sections 361, 363 and 552(b) of the Bankruptcy Code, Pre-Petition Lender is hereby granted legal, valid, binding, enforceable and perfected additional and replacement liens (the "**Adequate Protection Liens**"), in all property of the Debtor's estates except for the Excluded Assets,

16

including the DIP Facility Collateral, to the extent of any decrease in the value of Pre-Petition Lender's interests in the Pre-Petition Collateral occurring on or after the Petition Date, with such decrease in value to include decreases resulting from the Debtor's use (if any) of Cash Collateral, the depreciation, use, sale, loss, decline in value or market price of the Pre-Petition Collateral, or otherwise. The Adequate Protection Liens shall enjoy the same validity and extent as the Pre-Petition Liens. The Adequate Protection Liens are subject only to (i) existing liens and encumbrances that were senior to those of the applicable Pre-Petition Lender as of the Petition Date under applicable non-bankruptcy law, and which are valid, binding, enforceable, perfected and non-avoidable liens existing in the Pre-Petition Collateral as of the Petition Date[1] (the "**Permitted Liens**"), other than the Pre-Petition Liens; and (ii) the Carve-Out (as defined in paragraph 15).

9.    Section 507(b) Priority Administrative Claims. If, notwithstanding the provision of the Adequate Protection Liens, such Adequate Protection liens do not provide adequate protection Pre-Petition Lender's interests in the Pre-Petition Collateral, Pre-Petition Lender, shall (i) have a claim allowed under section 507(a)(2) and 507(b) of the Bankruptcy Code (the "**507(b) Claim**"), and, except with respect to being subordinated to the Carve-Out, such 507(b) Claim shall be entitled to priority over every other claim allowable under such section 507(a)(2); and (ii) notwithstanding anything herein to the contrary, be entitled to seek further adequate protection of its interests and such further relief as is consistent therewith.

10.    Superpriority Claims. Subject to the Carve-Out described in ordering paragraph 16 below, all of the DIP Indebtedness shall have the highest administrative priority under section 364(c)(1) of the Bankruptcy Code, and shall have priority over all other costs and expenses of

---

[1] The Debtor represents and warrants that, other than encumbrances permitted under Section 9.8 of the Pre-Petition Loan Agreement, there are no other liens or security interests encumbering the Pre-Petition Collateral.

610724

administration of any kind, including those specified in, or ordered pursuant to, sections 326, 330, 331, 503(b), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the Chapter 11 Case or any successor cases), and shall at all times be senior to the rights of the Debtor, any successor trustee or estate representative in the Chapter 11 Case or any successor cases (the "**Superpriority Claims**"). Nothing in this Order or the Approved Budgets (as defined in paragraph 18(a) below) shall constitute the consent by the DIP Lender or Pre-Petition Lender to the imposition of any costs or expense of administration or other charge, fees, liens, assessment or claim (including, without limitation, any amounts set forth in the Approved Budgets) against the DIP Lender or Pre-Petition Lender, their claims or collateral (including the Pre-Petition Collateral and the DIP Facility Collateral) under section 506(c) of the Bankruptcy Code or otherwise, all of which rights have been, subject to entry of the Final Order, waived by the Debtor.

11.    Perfection of DIP Facility Liens and Adequate Protection Liens. The DIP Facility Liens and the Adequate Protection Liens shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; provided, however, that notwithstanding the provisions of Section 362 of the Bankruptcy Code, (i) the DIP Lender, may, at its sole option, file or record or cause the Debtor to obtain any such landlord or warehousemen lien waivers or other third party consents or execute, file or record, at the Debtor's expense, any such UCC financing statements, notices of liens and security interests, mortgages, amendments to mortgages and/or other similar documents or instruments as the DIP Lender, may require, and (ii) DIP Lender, may require the Debtor to deliver to the DIP Lender,

610724

any chattel paper, instruments or securities evidencing or constituting any DIP Facility Collateral, and the Debtor is directed to cooperate and comply therewith. If DIP Lender, in its sole discretion, shall elect for any reason to cause to be obtained any landlord or warehouse lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages, amendments to mortgages or other documents or instruments with respect to such security interests and liens, or if the DIP Lender, in accordance with the DIP Loan Documents or this Order, elect to take possession of any DIP Facility Collateral, all such landlord or warehouse lien waivers or other third party consents, financing statements, mortgages, amendments to mortgages or similar documents or instruments or taking possession shall be deemed to have been filed or recorded or taken in this Chapter 11 Case as of the commencement of this Chapter 11 Case but with the priorities as set forth herein. The DIP Lender and Pre-Petition Lender may (in their sole discretion), but shall not be required to, file a certified copy of this Order in any filing or recording office in any county or other jurisdiction in which the Debtor has real or personal property and such filing or recording shall be accepted and shall constitute further evidence of (a) the DIP Lender's interest in the DIP Facility Collateral, and (b) Pre-Petition Lender's interest in the in the Pre-Petition Collateral.

12.    <u>Waiver by Debtor of Liens and Other Matters</u>. The Debtor and its estates (and any party in interest acting on behalf of the Debtor) hereby irrevocably waives, and is barred from asserting or exercising any right (a) without the DIP Lender's or Pre-Petition Lender's prior written consent (which may be withheld in their sole discretion) or (b) without prior indefeasible payment and satisfaction in full of the Indebtedness: (i) to grant or impose, or request that the Court grant or impose, under section 364 of the Bankruptcy Code or otherwise, liens on or security interests in any DIP Facility Collateral, which are pari passu with or senior to the DIP

610724

Facility Liens or the Adequate Protection Liens; (ii) to return goods pursuant to section 546(h) of the Bankruptcy Code to any creditor of the Debtor or to consent to any creditor taking any setoff against any of such creditor's pre-petition indebtedness based upon any such return pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise; (iii) to seek a surcharge of the DIP Facility Collateral or the Pre-Petition Collateral under section 506(c) of the Bankruptcy Code (which waiver shall be effective upon entry of the Final Order); (iv) to seek non-consensual use of Cash Collateral under section 363 of the Bankruptcy Code; (v) to modify or affect any of the rights of DIP Lender or the Pre-Petition Lender under this Order or any DIP Loan Documents by any order entered in any of the Chapter 11 Case or any successor cases; or (vi) propose a plan of reorganization or liquidation, or seek an extension of the exclusive right to file a plan or solicit acceptances with respect to any plan of reorganization or liquidation without the written consent of DIP Lender or the Pre-Petition Lender. *The provisions of this Paragraph 12 vary from the requirements of MLBR 4001-2(c).*

13.    <u>No Surcharge</u>.  Subject to entry of a final order with respect to the DIP Motion, in consideration of the DIP Facility and Carve-Out, and except with respect to (a) the Carve-Out, and (b) expenses incurred pursuant to an Approved Budget, in no event shall any costs or expenses of administration be imposed upon the DIP Lender or any of the DIP Collateral pursuant to Bankruptcy Code sections 105(a), 506(c) or otherwise, without the prior written consent of the DIP Lender, which may be withheld for any or no reason, and no such consent shall be implied from any action, inaction or acquiescence by the DIP Lender.  The DIP Lender shall not be subject in any way whatsoever to the equitable doctrine of "**marshalling**" or any similar doctrine with respect to the DIP Facility Collateral securing any DIP Indebtedness. *The provisions of this Paragraph 13 vary from the requirements of MLBR 4001-2(c).*

610724

14.    Sale Out of the Ordinary Course of Business.  The Debtor may not propose a sale of any of its assets outside the ordinary course of business unless (a) all proceeds realized from such sale, less any accrued, allowable and payable portion of the Carve-Out as contained in this Order, are transferred to DIP Lender and the Pre-Petition Lender, as its respective interests appear, for immediate application in reduction of the Indebtedness in the manner set forth in this Order, until such time as the Indebtedness shall have been satisfied in full.  Such sale proceeds shall not be permitted to be used by the Debtor under any circumstances except as otherwise provided by this Order, and any sale application or procedure involving all or any portion of the Debtor's assets shall expressly provide that DIP Lender or the Pre-Petition Lender (or its designee) may exercise its rights to credit bid its Indebtedness under Section 363(k) of the Bankruptcy Code.

15.    Modification of Automatic Stay; Other Remedies.

Subject to the entry of a final order on the DIP Motion, the automatic stay pursuant to Section 362 of the Bankruptcy Code is hereby modified as to DIP Lender and/or the Pre-Petition Lender to the extent necessary to permit each of them to:

(a)    Perform in accordance with, and exercise, enjoy and enforce their respective rights, benefits, privileges and remedies pursuant to this Order and the DIP Loan Documents without further application or motion to, or order from, the Court, or any other court, and regardless of any change in circumstances (whether or not foreseeable), and neither Section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code, or any other law, shall be utilized to prohibit DIP Lender and/or Pre-Petition Lender, from the exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies.  DIP Lender and Pre-Petition Lender are hereby granted leave to receive and apply payments to the Indebtedness from

21

collections on and proceeds of the Pre-Petition Collateral and the DIP Facility Collateral in the manner specified in this Order and the DIP Loan Documents.  In addition, DIP Lender and the Pre-Petition Lender are, as their interests may appear, hereby granted leave to, among other things, (i) file or record any financing statements, mortgages, amendments to mortgages, or other instruments or other documents to evidence the Adequate Protection Liens or the DIP Facility Liens, (ii) to charge and collect any interest, fees, costs, and expenses and other amounts accruing at any time under the DIP Loan Documents or this Order as provided therein, (iii) to give the Debtor any notice provided for in any of the DIP Loan Documents or this Order, and (iv) upon the occurrence of the Termination Date, and without application or motion to, or order from the Court or any other court, (a) terminate the DIP Facility and the DIP Loan Documents, (b) declare all Indebtedness immediately due and payable, and (c) revoke the Debtor's right, if any, under this Order and/or the other DIP Loan Documents to use Cash Collateral.

*(b)* Upon the occurrence of a Termination Date, exercise all of their rights and remedies under the Pre-Petition Loan Documents, the DIP Loan Documents, this Order and applicable law, including foreclosing or otherwise enforcing their liens on any or all of the Pre-Petition Collateral and the DIP Facility Collateral; provided that, prior to such exercise, DIP Lender and/or Pre-Petition Lender shall, three (3) Business Days prior to any such exercise, serve a notice of the Termination Date by hand delivery, facsimile or overnight mail on counsel to the Debtor, the Committee (if any) and the Office of the United States Trustee.  To the extent the Debtor, the Committee (if any) and/or the Office of the United States Trustee files any pleading opposing such exercise, the Court shall conduct a hearing on such pleading on an expedited or emergency basis, provided, however, the only issue that may be raised or addressed at such hearing is whether the Termination Date has occurred.  Subject to the right of parties-in-

613724

interest to contest whether a Termination Date has occurred, the Debtor shall cooperate. *The provisions of this Paragraph 15(b) vary from the requirements of MLBR 4001-2(c).*

16.    **Carve-Out.**

(a)    Subject to the remaining provisions of this paragraph, the Adequate Protection Liens, the DIP Facility Liens, the Superpriority Claims and the 507(b) Claim shall be subject to (i) the payment of any unpaid fees payable pursuant to 28 U.S.C. § 1930 (including, without limitation, fees under 28 U.S.C. § 1930(a)(6)), (ii) the fees due to the Clerk of the Court, (iii)(a) the actual approved fees and expenses incurred by the professionals retained by the Debtor, or any professionals retained by the Committee, retained by an order of the Court entered pursuant to sections 327 or 1103(b) of the Bankruptcy Code, and the expenses of individual members of any Committee, for the period prior to the occurrence of a Termination Date, provided they are within the amounts on a cumulative basis for any period covered by the Approved Budget and are subsequently allowed by the Bankruptcy Court under sections 330 and 331 of the Bankruptcy Code, and (b) wages and amounts due to employees for periods prior to the Termination Date as set forth in the Approved Budget (the items collectively in clauses (i) through (iii)(a) through (c) above, collectively, the "**Carve Out**").   In addition to the Carve-Out, the Adequate Protection Liens, the DIP Facility Liens, the Superpriority Claims and the 507(b) Claim shall also be subject to any Court approved Break Up Fee (as defined in the Purchase Agreement) due and owing to the Buyer (as defined in the Purchase Agreement as defined below) pursuant to the terms of an Agreement of Sale and Purchase between the Buyer (as defined in the Purchase Agreement) and the Debtor to be entered into concurrent with or immediately following the entry of this Order (the "**Purchase Agreement**"), which Break Up Fee shall be paid to the Buyer by the Debtor as and when due under the Purchase Agreement.

610724

Upon the occurrence of a Termination Date that is not waived by the DIP Lender and Pre-Petition Lender, DIP Lender shall fund the Carve-Out within seven (7) days after being provided with a notice or notices setting forth the amount of accrued and unpaid fees and costs allowable under the Approved Budget and this Order, together with supporting documentation for such amounts (the "**Carve-Out Funding**").    The portion of the Carve-Out Funding due to professionals will be funded directly to the professionals upon submission of the order approving the fees of such professionals.    Subject to the foregoing, the rights of the professionals to the Carve-Out or such lesser amounts as may be allowed by the Bankruptcy Court, shall be senior to the rights of DIP Lender to such funds.    Any Carve-Outs funded by DIP Lender shall be deemed advances under the DIP Facility.

(b)    Notwithstanding anything to the contrary in this Order or the DIP Loan Documents, no proceeds of any collateral held by Pre-Petition Lender and/or DIP Lender (including any pre-petition retainer funded by Pre-Petition Lender) pursuant to the Pre-Petition Loan Documents nor any Pre-Petition Collateral or DIP Facility Collateral (or proceeds thereof) nor any portion of the Carve Out may be used to pay any claims for services rendered by any of the Debtor's professionals, any other entity, or the Committee's professionals, if any, in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek or the result of which would be to obtain any order, judgment, determination, declaration or similar relief (x) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Indebtedness or the liens and security interests held by Pre-Petition Lender and/or DIP Lender, in the Pre-Petition Collateral or in the DIP Facility Collateral; (y) invalidating or otherwise interfering with the ability of DIP Lender and/or Pre-Petition Lender (or their designee) to credit

610724

bid the amount of the Pre-Petition Obligations and/or DIP Indebtedness pursuant to section 363(k) of the Bankruptcy Code; or (z) preventing, hindering or otherwise delaying, whether directly or indirectly, the exercise by DIP Lender and/or Pre-Petition Lender of any of their rights and remedies under the Pre-Petition Loan Documents, this Order and/or the DIP Loan Documents or the DIP Lender and/or Pre-Petition Lender, enforcement or realization upon any of the liens on or security interests in any Pre-Petition Collateral or DIP Facility Collateral; provided, however, that no more than $10,000 of DIP Loan proceeds or proceeds of any collateral held by Pre-Petition Lender and/or DIP Lender (including any pre-petition retainer funder by Pre-Petition Lender) pursuant to the Pre-Petition Loan Documents or any Pre-Petition Collateral or DIP Facility Collateral (or proceeds thereof) may be used to fund an investigation by the Committee into the existence of any causes of action against the Pre-Petition Lender with respect to the Pre-Petition Obligations, subject to the terms and limitations set forth below in Paragraph 27.  DIP Lender and/or Pre-Petition Lender shall retain their rights as a party in interest to object to any fee applications or other claims of any entity, including but not limited to the Debtor's and the Committee's, if any, professionals.

       (c)     So long as no Termination Date has occurred, the Debtor is authorized to use the proceeds of the  DIP Facility and the Cash Collateral in accordance with and limited to the amounts in the Approved Budget to pay such compensation and expense reimbursements of professional persons retained by the Debtor (the "**Debtor Professionals**") and any Committee appointed by the United States Trustee (the "**Committee Professionals**") as may be awarded by the Court pursuant to section 328, 330 or 331 of the Bankruptcy Code (the "**Professional Expenses**").  The Debtor Professionals and the Committee Professionals, if any, shall be permitted to submit to the Debtor, with copies to counsel for DIP Lender and Pre-Petition

610724

Lender, periodic statements (but no more frequently than on a monthly basis) for services rendered and reimbursable expenses incurred by them (the "**Conditional Professional Expenses**"). Nothing in this subparagraph shall prejudice or impair the rights of either the Debtor's Professionals or the Committee's Professionals to request an award of compensation in excess of the amounts set forth in the Approved Budget (the "**Unbudgeted Professional Expenses**") or the rights of the DIP Lender and/or Pre-Petition Lender to object to the amount or reasonableness of the Conditional Professional Expenses, the Professional Expenses or the Unbudgeted Professional Expenses. In no event, however, shall DIP Lender or Pre-Petition Lender be responsible for the payment of Unbudgeted Professional Expenses or any amounts in excess of the Carve-Out.

17.    <u>Cash Collection Procedures</u>. From and after the date of the entry of this Order all collections and proceeds of any DIP Facility Collateral or services provided by the Debtor and all other cash or cash equivalents which shall at any time come into the possession or control of the Debtor, or to which the Debtor shall become entitled at any time, shall be deposited in the same bank accounts into which the collections and proceeds of the Pre-Petition Collateral were deposited under the Pre-Petition Loan Documents (or in such other accounts as are designated by DIP Lender and/or Pre-Petition Lender from time to time) which shall include the Lock Box Account, and such collections and proceeds upon such deposit shall become the sole and exclusive property of DIP Lender and Pre-Petition Lender, and shall be applied against the Indebtedness as provided in this Order. In the event the Debtor intends to open any new bank accounts that would affect the right and ability of DIP Lender and/or Pre-Petition Lender, to receive any proceeds as contemplated by this Order, the Debtor shall first obtain a "lock box agreement," deposit account control agreement, or other written confirmation to the satisfaction

610724

of DIP Lender and Pre-Petition Lender from the relevant banking institution recognizing the rights of DIP Lender and Pre-Petition Lender as provided for in this Order. All cash and cash equivalents of the Debtor currently in any account of the Debtor or otherwise in the possession or control of the Debtor constitute proceeds of the Pre-Petition Collateral and shall be immediately remitted to Pre-Petition Lenders for application against the Indebtedness. All financial institutions in which any lockboxes, blocked accounts or other accounts of the Debtor is located are hereby authorized and directed to comply with any request of DIP Lender and/or Pre-Petition Lender to turnover to such party all funds therein without offset or deduction of any kind.

18.   Approved Budget; Use of Cash Collateral and DIP Facility Proceeds.

(a)   Attached as Exhibit "A" hereto and incorporated herein by reference is a budget (which has been approved by DIP Lender and Pre-Petition Lender) setting forth by line item all projected cash receipts, billings and cash disbursements for the time period from the weeks ending July 15, 2011 through August 29, 2011 (the "**Initial Approved Budget**"). The Initial Approved Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) to which DIP Lender and Pre-Petition Lender agree in their sole discretion (each such additional budget, a "**Supplemental Approved Budget**"), so long as such modification or supplement does not reduce the amount of the Professional Fee Expenses set forth on any Approved Budget without the consent of the Debtor Professionals and Committee Professionals. The aggregate of all items approved by DIP Lender and Pre-Petition Lender in the Initial Approved Budget and any and all Supplemental Approved Budgets (acceptable to DIP Lender and Pre-Petition Lender in their sole discretion) shall constitute an "**Approved Budget**."

610724

(b)      Debtor may use Cash Collateral and the proceeds of the DIP Facility exclusively to pay for the expenses incurred by Debtor as provided for in the Approved Budget. Debtor represents and warrants that (a) the expenditures set forth in the Approved Budget constitute all of Debtor's projected expenses during the period of the Approved Budget, and (b) the Cash Collateral and the sums to be advanced by DIP Lender pursuant to the DIP Facility are sufficient to pay all of the expenses set forth in the Approved Budget. Debtor's cash receipts shall not be less than as set forth in the Approved Budget and Debtor's expenses shall not exceed those set forth in the Approved Budget, subject to a two and one half percent (2.5%) variance on a cumulative basis for any period covered by the Approved Budget (the "**Budget Threshold**"). For clarification purposes, if the Debtor does not utilize the entire amount set forth in the Approved Budget for any given week, the Debtor may not, except for amounts relating to professional fees, carry forward such amount to the immediately succeeding week for purposes of calculating the Budget Threshold in any given period. On or before Wednesday of each week, the Debtor shall, in consultation with the DIP Lender, deliver to DIP Lender and Pre-Petition Lender a cash forecast for the immediately succeeding week. On the first day of each week, the Debtor shall deliver to DIP Lender and Pre-Petition Lender a reconciliation of the Approved Budget to actual receipts and disbursements for such previous week and for the period to date. Notwithstanding the foregoing, DIP Lender shall have no obligation to provide the DIP Facility if the Debtor exceeds the disbursement limits provided in the Approved Budgets.

19.      <u>Financial Reporting</u>.   In addition to all of the financial reports the Debtor is required to provide to Pre-Petition Lender pursuant to the Pre-Petition Loan Documents, which financial reports the Debtor shall continue to provide to Agents and Pre-Petition Lender timely in accordance with the Pre-Petition Loan Documents, the Debtor shall also provide the following

610724

reports to the DIP Lender and Pre-Petition Lender: (i) no later than 5:00 p.m. (Eastern Time) each business day, a log of each of the daily disbursements and collections; (ii) no later than 5:00 p.m. (Eastern time) each Wednesday, a comparison of the items in the Approved Budget for the preceding week to the Debtor's actual performance that includes a narrative summary of any material variances from the Approved Budget for the preceding week; and (iii) no later than the 10th day of each month, beginning on August 10, 2011, the Debtor's financial statements (including detail by operating division and consolidated balance sheets, income statements and cash flow statements) for the immediately preceding month in the same format as the Debtor has been providing to Pre-Petition Lender prior to the Petition Date.

20. <u>Covenants</u>. Subject to the entry of a final order on the DIP Motion, unless otherwise modified pursuant to this Order, Debtor acknowledges and agrees that all covenants set forth in the Pre-Petition Loan Documents are binding and enforceable and the Debtor shall timely comply with all of the covenants set forth in the Pre-Petition Loan Documents, this Order and the DIP Loan Documents. Further, the Debtor covenants and agrees it shall fully comply with the terms and conditions of its applicable collective bargaining agreement and not take any action to terminate any union employee without just cause.

21. <u>Application of Proceeds</u>. Neither the Debtor nor any other party shall have the right to direct or seek an order directing the manner of application of any payments to the DIP Lender or Pre-Petition Lender or any other receipts by the DIP Lender or Pre-Petition Lender of proceeds of any of the Pre-Petition Collateral or DIP Facility Collateral other than in the manner set forth in this Order and the Pre-Petition Loan Documents and the DIP Loan Documents.

22. <u>Repayment</u>. The Debtor shall be liable to repay the DIP Indebtedness in accordance with the DIP Loan Documents. The DIP Indebtedness shall be due and payable, and

610724

shall be paid, as and when provided for in the DIP Loan Documents, without any right of rescission, setoff, counterclaim, or defense for any reason, unless and to the extent agreed to in writing by the DIP Lender. In no event shall the Debtor be authorized to offset or recoup any amounts owed, or alleged to be owed, by the DIP Lender or Pre-Petition Lender to the Debtor against any of the DIP Indebtedness unless and to the extent expressly otherwise agreed to in writing by the DIP Lender.

23.    <u>DIP Lender and Pre-Petition Lender Reservation of Rights</u>.  DIP Lender and Pre-Petition Lender do not waive, and expressly reserve, any and all claims, defenses, rights and remedies they have pursuant to any or all of the Pre-Petition Loan Documents, the DIP Loan Documents, the Bankruptcy Code and/or other applicable law against the Debtor and any officer, director, employee, agent or other representative of the Debtor.  In addition, the rights and obligations of the Debtor and the rights, claims, liens, security interests and priorities of the DIP Lender and Pre-Petition Lender arising under this Order are in addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by the Debtor, in its pre-petition capacity, under the Pre-Petition Loan Documents.

24.    <u>Order Binding on Successors</u>.  Subject to the entry of a final order on the DIP Motion, the provisions of this Order shall be binding upon and inure to the benefit of the DIP Lender, Pre-Petition Lender, and the Debtor and its respective successors and assigns (including without limitation any trustee, examiner, responsible officer, estate administrator or representative or similar person appointed as a representative of the Debtor's estate or of any estate in any successor cases under the Bankruptcy Code or otherwise).  No third parties are intended to be or shall be deemed to be third party beneficiaries of this Order or the DIP Loan

61 )724

Documents. In no event shall DIP Lender or Pre-Petition Lender have any obligation to allow the use of Cash Collateral by, or extend any DIP Loans to, any chapter 7 or chapter 11 trustee appointed or elected for the estate of Debtor, absent the prior written consent of DIP Lender or Pre-Petition Lender (which may be granted or withheld in their sole discretion).

25.     Releases and Validation of Pre-Petition Obligations and Pre-Petition Liens; Allowance of Pre-Petition Obligations as Fully Secured Claim. Subject to the entry of a final order on the DIP Motion, the release, discharge, waivers and agreements set forth in this ordering paragraph will be deemed effective upon the entry of this Order, subject only to the rights of the Committee, if any, or any party in interest (other than the Debtor) with requisite standing as set forth in paragraph 27 below. Subject to the rights of the Committee, if any, or any party in interest (other than the Debtor) with requisite standing acting on behalf of the estates pursuant to paragraph 27, below, the Debtor and its estates, hereby: (a) release and discharge the Pre-Petition Lender together with all of its shareholders, affiliates, agents, attorneys, officers, directors and employees from any and all causes of action, claims, obligations, suits, judgments, damages, demands, debts, rights, and liabilities, however arising, including without limitation whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, or otherwise, arising out of, based upon or related to, in whole or in part, any of the Pre-Petition Loan Documents, any aspect of the pre-petition relationship between Pre-Petition Lender and the Debtor, or any other acts or omissions by Pre-Petition Lender in connection with any of the Pre-Petition Loan Documents, or Pre-Petition Lender's pre-petition relationship with the Debtor; (b) waive any and all claims and defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority,

610724

enforceability, subordination and avoidability (under sections 510, 544, 545, 547, 548, 550, 551, 552 or 553 of the Bankruptcy Code or otherwise) of the Pre-Petition Obligations and the security interests in and liens on the Pre-Petition Collateral in favor of the Pre-Petition Lender; and (c) agree, without further Court order and without the need for the filing of any proof of claim, to the allowance of the pre-petition claims of Pre-Petition Lender pursuant to sections 502 and 506 of the Bankruptcy Code on account of the Pre-Petition Obligations, as fully secured claims. ***The provisions of this Paragraph 25 vary from the requirements of MLBR 4001-2(c).***

26.     No Liability to Third Parties.  The DIP Lender and Pre-Petition Lender shall not, solely by having entered into, funded and complied with the DIP Loan Documents and the Order, (i) have liability to any third party nor shall they be deemed to be in control of the operations of the Debtor or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the Internal Revenue Code, the Unites States Comprehensive, Environmental Response, Compensation and Liability Act as amended, or any similar Federal or state statute), or owe any fiduciary duty to the Debtor, its creditors or its estates, and (ii) the DIP Lender's and Pre-Petition Lender's relationship with the Debtor shall not constitute nor be deemed to constitute a joint venture or partnership with the Debtor.

27.     Objections by Parties in Interest.  Subject to the entry of a final order on the DIP Motion, all of the provisions of this Order shall be final and binding on the Debtor (including, without limitation, its successors and assigns), the Debtor's shareholders, and all creditors and other parties in interest, including any chapter 11 or chapter 7 trustee hereinafter appointed.  The Debtor has represented, acknowledged, stipulated and agreed that all liens and security interests of Pre-Petition Lender in the Pre-Petition Collateral are legal, valid, binding, enforceable,

610724

properly perfected and not avoidable or subject to subordination, and that the Pre-Petition Debt is

allowable as a fully secured claim against the Debtor, and that the Pre-Petition Debt is valid,

legal, binding and enforceable and not subject to any contest, objection, recoupment, defense,

counterclaim, offset, claim of subordination, claim or recharacterization, claim of avoidance of

any nature, attack or challenge under the Bankruptcy Code, other applicable non-bankruptcy law

or otherwise.  In consideration of the DIP Lender's agreement to provide the DIP Facility, and

Pre-Petition Lender's agreement to the use of the Cash Collateral, the Debtor has waived and

shall be barred from (i) challenging the amount, validity, extent, perfection or priority of or

seeking to set aside, avoid, offset or subordinate any of the Pre-Petition Debt or any liens or

security interests of the Pre-Petition Lender in the Pre-Petition Collateral, and (ii) from asserting

any other claims or causes of action against the Pre-Petition Lender, including without limitation

claims for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549 or 550 of the

Bankruptcy Code.  Notwithstanding the foregoing, the Committee and any party-in-interest with

requisite standing (other than the Debtor) shall have until the lesser of (i) sixty (60) days of the

entry of this Order; (ii) thirty (30) days from the date of formation of a Committee (if

applicable); or (iii) five (5) days prior to a hearing on the Sale under section 363 of the

Bankruptcy Code (the "**Investigation Period**"), to file, on behalf of the Debtor's estates, and to

serve upon counsel for the DIP Lender and Pre-Petition Lender, an adversary complaint

respecting (a) the claims, causes of actions and defenses released by the Debtor pursuant to

ordering paragraph 25 above or (b) the validity, extent, priority, avoidability, or enforceability of

the Pre-Petition Obligations, the Pre-Petition Liens in the Pre-Petition Collateral.  In the event

that no adversary complaint is filed with this Court by the Committee or party-in-interest and

served upon counsel for the DIP Lender and Pre-Petition Lender by 5:00 p.m. Eastern Time on

610724

the last day of the Investigation Period, the provisions of this Order including, without limitation, paragraph 25 and the Debtor's Stipulations in this Order shall become final and binding for all purposes and upon all parties. If no such adversary complaint is filed during the Investigation Period: (1) the repayment of the Pre-Petition Debt shall be deemed final and indefeasible, not subject to subordination and otherwise unavoidable, (2) the Pre-Petition Debt shall constitute an allowed claim of Pre-Petition Lender (without the necessity of the filing of proofs of claim by Pre-Petition Lender), not subject to subordination and otherwise unavoidable, for all purposes in the Chapter 11 Case and in any subsequent chapter 7 case; (3) Pre-Petition Lender's liens on the Pre-Petition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable; and (4) Pre-Petition Lender, the Pre-Petition Debt, the Pre-Petition Loan Documents and Pre-Petition Lender's on the Pre-Petition Collateral shall not be subject to any other or further challenge by any party-in-interest seeking to exercise the rights of the Debtor's estates, including without limitation, any successor thereto. The filing of any such adversary complaint by the Committee or any party-in-interest shall constitute an immediate Termination Date under this Order and an Event of Default under the DIP Loan Documents. For the avoidance of doubt, any Chapter 7 trustee appointed or elected in these cases shall, until expiration of the Investigation Period and thereafter for the duration of any litigation timely commenced pursuant to this paragraph 27 (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtor's estates), be deemed to be a party "other than the Debtor" and shall not, for purposes of such litigation, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtor in this Order; provided however, that upon the expiration of the Investigation Period, if no litigation is timely commenced, any Chapter 7 trustee shall be bound by the acknowledgments, admissions,

34

61 )724

confirmations and stipulations of the Debtor in this Order. *The provisions of this Paragraph 27 vary from the requirements of MLBR 4001-2(c).*

28.    Effect of Modification of Order.  The Debtor shall not, without the DIP Lender's or Pre-Petition Lender's prior written consent (which shall be given or refused in their sole discretion), seek to modify, vacate or amend this Order or any DIP Loan Documents.  If any of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect the validity of any obligation outstanding immediately prior to the effective time of such stay, modification or vacation, or the validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to any such obligations.  Notwithstanding any such stay, modification or vacatur, any obligation outstanding immediately prior to the effective time of such modification, stay or vacatur shall be governed in all respects by the original provisions of this Order and the DIP Lender and Pre-Petition Lender shall be entitled to all the rights, privileges and benefits, including, without limitation, the security interests and priorities granted herein, with respect to all such obligations.  The rights, remedies, powers, privileges, liens and priorities of DIP Lender and Pre-Petition Lender provided for in this Order and in any other DIP Loan Document shall not be modified, altered or impaired in any way by any subsequent order (including any confirmation order) or by any plan of reorganization or liquidation in this Chapter 11 Case or in any subsequent case under the Bankruptcy Code unless and until (a) with respect to the DIP Lender, the DIP Indebtedness has been indefeasibly paid, in full, in cash and the DIP Loan Documents are terminated in accordance therewith; and (b) with respect to Pre-Petition Lender, the Pre-Petition Debt has been indefeasibly paid, in full, in cash, and the Pre-Petition Loan Documents are terminated in accordance therewith.  If any provisions of this Order are

35

hereafter modified, vacated or stayed by subsequent order of this or any other Court without the prior written consent of the DIP Lender and Pre-Petition Lender (which consent may be given or refused in their sole discretion), then such event shall constitute an immediate Termination Date under this Order and an Event of Default under the DIP Loan Documents. *The provisions of this Paragraph 28 vary from the requirements of MLBR 4001-2(c).*

29.    Safe Harbor.   The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtor to obtain credit on the terms and conditions upon which the Debtor, DIP Lender and Pre-Petition Lender have agreed.   Thus, each of such terms and conditions constitutes a part of the authorization under section 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in section 364(e) of the Bankruptcy Code.

30.    Subsequent Hearing; Procedure for Objections and Entry of Final Order.   The DIP Motion is set for a final hearing ("**Final Hearing**") before this Court at 11:30 a.m. on July 26, 2011 (such date or such later date to which the Final Hearing is adjourned or continued with DIP Lender's and Pre-Petition Lender's consent, the "**Final Hearing Date**"), at which time any party in interest may present any timely filed objections to the entry of the Final Order.   The Debtor shall promptly serve a copy of this Order, by regular mail upon (i) the United States Trustee; (ii) all affected state and federal taxing authorities; (iii) the creditors holding the 20 largest unsecured claims against the Debtor (on a consolidated basis), or the Committee, if appointed; and (iv) any other party which theretofore has filed in the Chapter 11 Case a request for special notice with this Court and served such request upon Debtor's counsel.   Any objections to this Order and the entry of a Final Order on the DIP Motion shall be in writing and shall be filed with the Court and served so that they are received no later than July 22, 2011 at or before

610724

4:00 p.m. (Eastern Time) by (i) counsel to the Debtor Nutter McClennen & Fish LLP, Seaport West, 155 Seaport Boulevard, Boston, Massachusetts 02210, Attention: Richard S. Rosenstein; (ii) counsel for DIP Lender and Pre-Petition Lender: Patton Boggs LLP, 8484 Westpark Drive, 9th Floor, McLean, Virginia 22102, Attention: Alan Noskow; Patton Boggs LLP, 2550 M Street, NW, Washington, DC 20037, Attention: Erika Morabito; and Choate Hall & Stewart LLP, Two International Place, Boston, MA 02210, Attention: Douglas Gooding; and (iii) the United States Trustee. Any objections by creditors or other parties in interest to any of the provisions of this Order shall be deemed waived unless filed and served in accordance with this paragraph.

31.     <u>Objections Overruled or Withdrawn</u>. All objections to the entry of this Order have been withdrawn or are herby overruled.

32.     <u>Controlling Effect of Order</u>. To the extent any provisions in this Order conflict with any provisions of the DIP Motion, any Pre-Petition Loan Document, or any DIP Loan Document the provisions of this Order shall control.

33.     <u>Order Effective</u>. This Order shall be effective as of the date of signature by the Court notwithstanding the possible application of Bankruptcy Rules 4001(a)(3), 6004(h), 7062, 9014 or otherwise, and the Clerk of the Court is hereby directed to enter this Order on the Court's docket in this Chapter 11 Case.

34.     <u>Non Waiver</u>. No omission or delay by DIP Lender or Pre-Petition Lender in exercising any right or powers under this Order, the Pre-Petition Loan Documents or DIP Loan Documents, or any related agreement, will impair such right or power or be construed to be a waiver of any default or breach or an acquiescence therein, and any single or partial exercise of any such right or power will not preclude other or further exercise thereof or the exercise of any other right, and no waiver will be valid unless in writing and signed by DIP Lender and Pre-

610724

Petition Lender and then only to the extent specified. This Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Lender and Pre-Petition Lender may have to bring or be heard on any matter before this Court.

DATED: July _15_, 2011

_____

[_____]
United States Bankruptcy Judge

610724

# EXHIBIT A

## Budget

610724

**Women's Apparel Group Holdings, Inc.**
**DIP Budget**

| *$ in thousands* | 1 | 2 | 3 | 4 | 5 | 6 | TOTAL |
|---|---|---|---|---|---|---|---|
| Fiscal Month | JUL | JUL | JUL | AUG | AUG | AUG | 6 Weeks |
| For the Week Ending | 07/16/11 | 07/23/11 | 07/30/11 | 08/06/11 | 08/13/11 | 08/20/11 | 08/20/11 |
| **Cash Collected** | | | | | | | |
| Cash Collected | $ 2,315 | $ 1,922 | $ 1,799 | $ 1,953 | $ 1,748 | $ 1,525 | $ 11,261 |
| **Contra Cash Receipts** | | | | | | | |
| Sales Tax Disbursed | - | 104 | - | - | - | - | 104 |
| Customer Refunds | - | 85 | - | - | - | - | 85 |
| **Net Cash Receipts** | $ 2,315 | $ 1,733 | $ 1,799 | $ 1,953 | $ 1,748 | $ 1,525 | $ 11,072 |
| **COGS Cash Disbursements** | | | | | | | |
| COGS Merchandise | 514 | 705 | 926 | 879 | 706 | 946 | 4,676 |
| COGS Other | - | 9 | 9 | 9 | 9 | 9 | 45 |
| In/Out Freight and Duty | 3 | 539 | 202 | 247 | 197 | 404 | 1,592 |
| COGS Cash Disbursements | 517 | 1,253 | 1,137 | 1,135 | 912 | 1,359 | 6,313 |
| Catalog Costs | 518 | 607 | 292 | 35 | 583 | 197 | 2,231 |
| **Cash Contribution after Catalog Costs** | $ 1,281 | $ (127) | $ 370 | $ 782 | $ 253 | $ (31) | $ 2,528 |
| E-Commerce Costs | 35 | 52 | 107 | 111 | 93 | 37 | 435 |
| Call Center and Customer Service Costs | 245 | 208 | 208 | 142 | 120 | 104 | 1,027 |
| **Contribution After Selling Costs** | $ 1,001 | $ (386) | $ 55 | $ 529 | $ 40 | $ (172) | $ 1,066 |
| **Fulfillment Expense:** | | | | | | | |
| Facility Rent | - | - | - | 100 | - | - | 100 |
| Facility Expenses | - | - | - | 65 | - | - | 65 |
| Utilities | - | - | - | 38 | - | - | 38 |
| Equipment Leases | - | - | - | 13 | - | - | 13 |
| Total Fulfillment Expense | - | - | - | 216 | - | - | 216 |
| **Overhead:** | | | | | | | |
| Salary Payroll | 224 | - | 176 | - | 166 | - | 565 |
| Hourly Payroll | 57 | 58 | 58 | 57 | 57 | 57 | 345 |
| Payroll Taxes | 101 | 13 | 52 | 13 | 50 | 13 | 241 |
| Payroll Processing | - | 1 | 1 | 1 | 1 | 1 | 3 |
| Software Expenses | 68 | 30 | 33 | 14 | 6 | 30 | 181 |
| Telephone & Internet | - | 11 | 11 | 11 | 11 | 11 | 56 |
| Supplies | - | 9 | 9 | 8 | 8 | 8 | 42 |
| T&E | 2 | 3 | 3 | 3 | 3 | 3 | 15 |
| Union Retirement Costs | - | - | - | - | - | - | - |
| Employee Benefits | 11 | 84 | 114 | 6 | 19 | 84 | 319 |
| Insurance | - | 32 | - | - | 32 | - | 64 |
| Professional Fees | - | - | - | - | - | - | - |
| PLCC Costs | - | 3 | 3 | 3 | 3 | 3 | 16 |
| Bank Processing Charges | 2 | 3 | 3 | 3 | 3 | 3 | 17 |
| Transition Service Agreements | 30 | 21 | 21 | 21 | 21 | 21 | 136 |
| Other G&A | - | - | - | - | - | - | - |
| Total Overhead | 495 | 268 | 483 | 141 | 380 | 235 | 2,001 |
| **Net Cash Inflow / (Outflow) from Operations** | $ 506 | $ (654) | $ (428) | $ 172 | $ (340) | $ (407) | $ (1,151) |
| Non-Recurring | - | 145 | - | 21 | 21 | 21 | 208 |
| Restructuring Expenses | 320 | - | - | - | - | - | 320 |
| Capital Expenditures | - | 4 | 4 | 5 | 5 | 5 | 24 |
| Other Bankruptcy Related Expenses | - | - | - | - | - | - | - |
| Nutter (Bankruptcy Related) | - | 12 | 12 | 12 | 12 | 12 | 60 |
| Financo (Bankruptcy Related) | 50 | - | - | - | - | 50 | 100 |
| Unsecured Creditors Committee (Bankruptcy Related) | - | 10 | 10 | 10 | 10 | 10 | 50 |
| Admin and Board Fees | - | - | - | 31 | - | - | 31 |
| DIP Interest | - | - | - | - | - | 91 | 91 |
| **Total Non-Operating Cash Disbursements** | 303 | 171 | 26 | 80 | 49 | 99 | 727 |
| **Net Cash Inflow / (Outflow)** | $ 203 | $ (825) | $ (454) | $ 92 | $ (389) | $ (505) | $ (1,878) |
| **Beginning Cash** | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Plus: Revolver Draw | 1,825 | 3,047 | 2,303 | 1,911 | 2,186 | 2,080 | 13,352 |
| Plus: Cash Receipts from Wells Fargo | - | - | - | - | - | - | - |
| Plus: Excess Cash Receipts | - | - | - | - | - | - | - |
| Less: Disbursements | (2,112) | (2,747) | (2,253) | (1,861) | (2,136) | (2,030) | (13,139) |
| Less: Checks (Clearing) / Issued | 287 | (300) | (50) | (50) | (50) | (50) | (213) |
| **Ending Cash (Bank Balance)** | $ - | $ - | $ - | $ - | $ - | $ (0) | $ (0) |
| **Beginning Revolver** | $ 8,528 | $ 6,213 | $ 4,291 | $ 2,492 | $ 539 | $ - | $ 8,528 |
| Less: Cash Receipts (Payments) | (2,315) | (1,922) | (1,799) | (1,953) | (539) | - | (8,528) |
| Plus: Revolver Draws | - | - | - | - | - | - | - |
| **Ending Revolver (Excluding L/Cs) - (Bank Balance)** | $ 6,213 | $ 4,291 | $ 2,492 | $ 539 | $ - | $ - | $ - |
| **DIP Facility** | $ - | $ 1,825 | $ 4,872 | $ 7,175 | $ 9,085 | $ 10,064 | $ - |
| Less: Cash Receipts (Payments) | - | - | - | - | (1,208) | (1,525) | (2,733) |
| Plus: Revolver Draws | 1,825 | 3,047 | 2,303 | 1,911 | 2,186 | 2,080 | 13,352 |
| **Ending DIP Facility (Bank Balance)** | $ 1,825 | $ 4,872 | $ 7,175 | $ 9,085 | $ 10,064 | $ 10,619 | $ 10,619 |
| **Total Checks Outstanding** | $ 925 | $ 625 | $ 575 | $ 525 | $ 475 | $ 425 | $ 425 |