# Exhibit C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| WOMEN'S APPAREL GROUP, LLC | Case No. 11-16217 (JNF) |
| Debtor. | |

### BID PROCEDURES[1]

The above-captioned debtor (the "**Debtor**") is a debtor in possession in the United States Bankruptcy Court in the District of Massachusetts (the "**Bankruptcy Court**"), under Case No. 11-16217 (JNF). By motion dated July 15, 2011 (the "**Motion**"), the Debtor seeks, among other things, approval of the process and procedures set forth below (the "**Bid Procedures**") to effectuate the sale (the "**Sale**") of substantially all of the Debtor's assets to be acquired in accordance with the Sale (the "**Acquired Assets**") outside the ordinary course of business (the "**Transaction**") free and clear of all liens, claims, encumbrances and other "interests" within the meaning of 11 U.S.C. § 363(f) of the Bankruptcy Code (collectively, the "**Encumbrances**"). The Bid Procedures are designed to facilitate a full and fair bidding process to maximize the value of the Acquired Assets for the benefit of the Debtor's creditors and their bankruptcy estates.

On or before _____, 2011, as further described below, the Bankruptcy Court shall conduct a hearing (the "**Sale Hearing**") at which time the Debtor shall seek entry of an order (the "**Sale Order**") authorizing and approving the sale of the Acquired Assets (the "**Proposed Sale**") to Distinctive Apparel, Inc. ("**DAI**" or the "**Stalking Horse Purchaser**"), with respect to the proposed the Sale (to the Stalking Horse Purchaser or to any other Successful Bidder(s) (the "**Alternative Purchaser**")), and subject to higher or better bids.[2]

*Asset Purchase Agreement*

On _____, 2011, the Debtor entered into an asset purchase agreement (the "**Purchase Agreement**") with the Stalking Horse Purchaser, pursuant to which the Stalking Horse Purchaser proposed to acquire the Acquired Assets. While the assets to be purchased as part of the Transaction do not include the Excluded Assets, and do not provide for the assumption by the

---

[1] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Purchase Agreement (defined herein).

[2] "Acquired Assets" shall refer to the Properties and Purchased Assets as more fully set forth in the Purchase Agreement.

1

Stalking Horse Purchaser of any executory contracts and unexpired leases of the Debtor, the Debtor is willing to consider offers that include Excluded Assets or that provide for the assumption and assignments of the Debtor's executory contracts (the "**Assigned Contracts**"). Pursuant to the Purchase Agreement, the Stalking Horse Purchaser will provide consideration for the Acquired Assets in an amount equal to the Purchase Price. The Transaction contemplated by the Purchase Agreement is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to sections 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**").

*Participation Requirements*

Unless otherwise ordered by the Bankruptcy Court, in order to participate in the bidding process, each person (a "**Potential Bidder**") must first deliver (unless previously delivered) to (i) counsel to the Debtor, Nutter McClennen & Fish LLP, Seaport West, 155 Seaport Boulevard, Boston, MA 02210 (Attn: _____); (ii) counsel to the Committee; (iii) counsel to the Stalking Horse Purchaser, Patton Boggs LLP, 8484 Westpark Drive, Ninth Floor, McLean, Virginia 22102 (Attn: Alan Noskow, Esq.) and Patton Boggs LLP, 2550 M. Street, N.W., Washington, D.C. 20037 (Attn: Erika Morabito); and Choate Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: _____); and (iv) counsel to the of the United States Trustee, _____ (collectively, the "**Notice Parties**"), no later than _____, 2011, the following items (collectively, the "**Participation Requirements**"):

(a)   Confidentiality Agreement. An executed confidentiality agreement in form and substance reasonably acceptable to the Debtor (each a "**Confidentiality Agreement**"); and

(b)   Proof of Financial Ability to Perform. Within one (1) day after the later of (i) a Potential Bidder's initial access to Due Diligence Materials (as described below) or (ii) the date of entry of the Bidding Procedures Order, written evidence that the Debtor, after consulting with DAI, reasonably concludes that the Potential Bidder has the necessary financial ability to close the contemplated Transaction and provide adequate assurance of future performance under all the Assigned Contracts to be assumed and assigned in such contemplated Transaction. Such information should include, inter alia, the following:

(i)   the Potential Bidder's current financial statements (audited if they exist); and

(ii)  any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor, after consulting with DAI, demonstrating that such Potential Bidder has the ability to close the contemplated Transaction; provided, however, that the Debtor shall determine, in their reasonable discretion, in consultation with the Debtor's advisors, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Potential Bidder's financial qualifications.

> Provided, however, that in lieu of a Potential Bidder's financial statements, the Debtor may accept other information that reasonably demonstrates a Potential Bidder's financial condition.

*Access to Due Diligence Materials*

Upon satisfaction of the Participation Requirements, the Debtor will afford each Potential Bidder due diligence access to the Acquired Assets; provided, however, that (i) the Debtor shall have the right to reasonably limit the due diligence provided to competitors and (ii) the Debtor will have no obligation to provide due diligence access after the Bid Deadline (defined below). The Debtor will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access for Potential Bidders.

If the Debtor furnishes any information related to the Debtor or the Acquired Assets not theretofore given to the Stalking Horse Purchaser, then the Debtor shall immediately make such information available to the Stalking Horse Purchaser.

*Designation as Qualified Bidder*

A "Qualified Bidder" is a Potential Bidder that delivers the documents described in subparagraphs (a) and (b) above, and that the Debtor determines is reasonably likely to submit a bona fide offer that would result in greater value being received for the benefit of the Debtor's creditors than under the Purchase Agreement and to be able to consummate a sale if selected as a Successful Bidder (defined below). As soon as is practicable, upon receipt of such documents the Debtor shall notify the Potential Bidder that such Potential Bidder is a Qualified Bidder.

DAI is a Qualified Bidder and shall be entitled to credit bid all or a portion of its claims against the Debtor (including without limitation any claims arising from any subordinated secured debt held by DAI) to the fullest extent permissible under section 363(k) of the Bankruptcy Code. Notwithstanding any provisions to the contrary herein, DAI shall not be required to submit a Bid or Qualified Bid for purposes of exercising its right to credit bid under section 363(k) of the Bankruptcy Code.

*Bid Deadline*

The deadline for submitting bids by a Qualified Bidder shall be _____, 2011, at 12:00 p.m. (Eastern Time) (the "**Bid Deadline**"). A Bid received after the Bid Deadline shall not constitute a Qualified Bid (as defined below).

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "**Bid**") shall deliver written copies of its Bid to the Notice Parties by the Bid Deadline.

*Determination of Qualified Bid Status*

3

To be eligible to participate in the Bidding Process each Qualified Bidder (other than the Stalking Horse Purchaser) must deliver to the Debtor a written offer so as to be received by the Bid Deadline and that complies with each of the following conditions:

(a) <u>Modified Agreement</u>. The Bid must be on terms that, in the Debtor's business judgment are substantially the same or better than the terms of the Purchase Agreement. A Bid must include transaction documents executed by the Qualified Bidder pursuant to which the Qualified Bidder proposes to effectuate the contemplated Transaction. A Bid shall include a black-lined copy of the Purchase Agreement (the "Modified Agreement") to show all changes requested by the Bidder, including those related to the Purchase Price.

(b) <u>Acquired Assets</u>. Each Bid shall be for all or a portion of the Acquired Assets that the Qualified Bidder seeks to acquire. Each Bid may also include Excluded Assets and potential assumption or assignment of the Assigned Contracts. **DEBTOR MAKES NO REPRESENTATIONS OR WARRANTIES REGARDING THE CONDITION OF THE ACQUIRED ASSETS AT CLOSING AND PURCHASER TAKES SUCH ACQUIRED ASSETS ON AN AS-IS / WHERE-IS BASIS.**

(c) <u>Contingencies</u>. A Bid may not be conditioned on obtaining internal approval, obtaining financing or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in all material respects at the closing of specified conditions, none of which shall be more burdensome than those set forth in the Purchase Agreement.

(d) <u>Authorization to Bid</u>. A Bid shall include evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified Agreement.

(e) <u>Good Faith Deposit</u>. Each Bid or Combination Bid must be accompanied by a cash deposit in an amount equal to ten percent (10%) of the proposed purchase price offered by the Qualified Bidder in its Qualified Bid (the "**Good Faith Deposit**"). Each Bid must provide that the Bidder will forfeit its Good Faith Deposit as liquidated damages if such Bidder defaults under or revokes the contemplated Transaction prior to the consummation of the Proposed Sale with the Successful Bidder (defined below). A Bidder shall forfeit the Good Faith Deposit if (i) the Bidder is determined to be a Qualified Bidder and withdraws its bid before the Bankruptcy Court approved the Debtor's selection of the winning bid, and/or (ii) withdraws or breaches the Purchase Agreement without Debtor's consent before consummation of the sale.

(f) <u>No Fees payable to Qualified Bidder</u>. A Bid (other than the Stalking Horse Bid(s)) may not request or entitle the Qualified Bidder to any break-up fee, termination

4

        fee, expense reimbursement or similar type of payment. Moreover, by submitting a Bid a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or the Bidding Procedures.

    (g)    <u>Financing Sources</u>. A Bid must contain evidence of the ability to consummate the Transaction satisfactory to the Debtor with appropriate contact information for all such financing sources.

    (h)    <u>Minimum Initial Bid Requirement</u>. Each Qualified Bidder's Bid shall have an initial minimum bid requirement equal to the sum of (i) the Purchase Price, (ii) $500,000, (iii) the Break-up Fee and (iv) a fee of 10% of the difference between the Qualified Bidder's Bid and the Purchase Price to be paid to Financo, Inc. (the "**Minimum Initial Bid**").

    (i)    <u>Other Evidence</u>. Each Bid must contain evidence satisfactory to the Debtor that the bidder is reasonably likely (based on availability of financing, experience and other considerations) to be able to timely consummate a purchase of the Acquired Assets if selected as the Successful Bidder (as defined below).

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, in the Debtor's reasonable discretion (taking into account the terms and conditions of any assumed debt obligations), and that satisfies the Bid Deadline requirement above, shall constitute a qualified bid ("**Qualified Bid**"). In the event that a Bid is determined not to be a Qualified Bid in accordance with the conditions set forth above, the Qualified Bidder shall be notified by the Debtor within three (3) business days of any conditions which it has failed to satisfy and the Qualified Bidder shall have two (2) days from the date of such notification to modify its Bid to render it a Qualified Bid. If a Qualified Bidder declines or fails to modify its Bid as provided for herein, the Qualified Bidder shall be refunded its Good Faith Deposit and all accumulated interest thereon upon or within one (l) business day after entry of the Sale Order.

*Auction*

In the event that the Debtor receives at least one (1) Qualified Bid (other than the Bid by the Stalking Horse Purchaser) by the Bid Deadline, the Debtor shall conduct the Auction of the Acquired Assets to determine the highest and otherwise best bid with respect to the Acquired Assets. No later than _____, 2011 at 4:00 p.m. (prevailing Eastern time), the Debtor will notify all Qualified Bidders of (i) the highest or otherwise best Qualified Bid for the Acquired Assets or any portion(s) thereof (the "**Baseline Bid**") and (ii) the time and place of the Auction. The Auction shall commence on _____, 2011 at 10:00 a.m. at the offices of Nutter McClennen & Fish LLP, Seaport West, 155 Seaport Boulevard, Boston, MA 02210.

If, however, no such Qualified Bid other than that of the Stalking Horse Purchaser is received by the Bid Deadline, the Debtor will report the same to the Bankruptcy Court, will declare the Stalking Horse Purchaser the Successful Bidder and will proceed with the Transaction pursuant to the terms of the Purchase Agreement, upon entry of an order approving the sale of the Acquired Assets to the Stalking Horse Purchaser.

5

*Participation in the Auction*

Only the Debtor, the Stalking Horse Purchaser, any representative of the Committee, and any Qualified Bidder who has timely submitted a Qualified Bid (and professional advisors to each of these parties) may attend the Auction. Each Qualified Bidder in attendance shall confirm that it has not engaged in any collusion with respect to the bidding or the sale. Only the Stalking Horse Purchaser and other Qualified Bidders may make any subsequent Qualified Bids at the Auction.

The Debtor and its professional advisors shall direct and preside over the Auction. Bidding at the Auction shall begin with the Baseline Bid(s), which, in the event such Baseline Bid(s) is not that of the Stalking Horse Purchaser, shall be in an amount at least equal to the Minimum Initial Bid. All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders and the Stalking Horse Purchaser. The Debtor shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid(s), all Overbids and the Successful Bid(s).

*Terms of Overbids*

An "**Overbid**" is any bid made at the Auction subsequent to the Debtor's announcement of the Baseline Bid. Any Overbid on the Acquired Assets must be made in increments of at least $250,000 over the previous highest or best bid.

Each Overbid must comply with the conditions for a Qualified Bid set forth above other than the Minimum Initial Bid requirement. Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtor accepts a higher Qualified Bid as an Overbid. The Debtor shall announce at the Auction the material terms of each Overbid and the basis for calculating the total consideration offered in each such Overbid.

*Closing the Auction*

Upon conclusion of the bidding, the Debtor shall immediately determine, the highest or otherwise best offer or combination of offers for the Acquired Assets (the "**Successful Bid**") and the entity or entities submitting such Successful Bid(s) (the "**Successful Bidder**"), and the next highest or otherwise best offer or offers after the Successful Bid (the "**Back-Up Bid**") and the entity or entities submitting such Back-Up Bid (the "**Back-Up Bidder**"), and advise the Qualified Bidders of such determinations.

Thereafter, the Auction shall be closed, and the Debtor shall immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Proposed Sale. If the Stalking Horse Purchaser's final bid is deemed to the highest and best bid at the Auction, the Stalking Horse Purchaser shall be the Successful Bidder. The Back-Up Bid shall

remain open, and the Back-Up Bidder shall be required to fully perform under such Back-Up Bid, until consummation of the sale with the Successful Bidder.

*Failure to Close*

In the event the Successful Bidder (unless the Successful Bidder is the Stalking Horse Purchaser) fails to consummate the sale as a result of the Successful Bidder's default or breach under the applicable purchase agreement in accordance with the terms of such purchase agreement by the closing date contemplated in such purchase agreement, the Debtor shall retain the Successful Bidder's Good Faith Deposit as liquidated damages, and be free to enter into a new purchase agreement with the Back-Up Bidder.

Following the approval of the sale of the Acquired Assets to the Successful Bidder at the Sale Hearing, if such Successful Bidder fails to consummate an approved sale within thirty (30) days after entry of an Order approving the Sale, the Debtor shall be authorized, but not required, to deem the Back-Up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtor, in consultation with DAI, shall be authorized, but not required, to consummate the sale with the Back-Up Bidder submitting such Back-Up Bid without further order of the Bankruptcy Court.

*Stalking Horse Purchaser Breakup Fee*

If Debtor accepts a Successful Bid, other than a bid of the Stalking Horse Purchaser, as the highest or best offer, Debtor shall pay Stalking Horse Purchaser at the closing of the Sale of the Acquired Assets to the Successful Bidder (the "**Competing Transaction**") as reasonable compensation for Stalking Horse Purchaser's efforts in connection with the negotiation and execution of the Purchase Agreement and the transactions contemplated thereby an amount equal to 4% of the Successful Bid (the "**Break-up Fee**").  No Break-up Fee will be due and owing unless the Bid Procedures have been approved and the Stalking Horse Purchaser is not the winning bidder in the Auction.

The Break-up Fee obligation of Debtor shall be payable solely from the proceeds from a Competing Transaction or other sale of the Acquired Assets or any portion thereof, as applicable; provided, however, that in the event the closing of a Competing Transaction or other sale of the Acquired Assets or any portion thereof, as applicable, does not yield cash proceeds sufficient to pay the Break-up Fee to Stalking Horse Purchaser, then Stalking Horse Purchaser reserves the right to seek payment of the Break-up Fee as an administrative expense of Debtor and Debtor's estate under sections 503(b) and 507(a) of the Bankruptcy Code.

*Consent to Jurisdiction as Condition to Bidding*

All Qualified Bidders, including the Stalking Horse Purchaser, at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Qualified Bidder's contemplated Transaction documents, as applicable.

*Acceptance of Successful Bid*

7

The Debtor shall sell the Acquired Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtor's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of such bid. The Debtor will be deemed to have accepted a Qualified Bid only when such bid has been approved by the Bankruptcy Court at the Sale Hearing.

*Free of Any and All Interests*

As set forth in the Purchase Agreement, except as otherwise provided for therein or in another Successful Bidder's purchase agreement, all of the Debtor's right, title and interest in and to the Acquired Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "**Interests**"), in accordance with section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Acquired Assets.

*Credit Bidding*

The Stalking Horse Purchaser shall be entitled to credit bid all or a portion of its claims (whether prepetition or postpetition) against the Debtor to the fullest extent permissible under section 363(k) of the Bankruptcy Code. Credit bids by the Stalking Horse Purchaser will be considered and accepted or rejected by the Debtor in the same manner as bids by other Qualified Bidders. At all relevant times, the Stalking Horse Purchaser shall be deemed a Qualified Bidder. Any such bid by the Stalking Horse Purchaser is excepted from the requirement that its bid be accompanied by a Good Faith Deposit.

*Sale Hearing*

The Sale Hearing shall be conducted by the Bankruptcy Court on or before \_\_\_\_\_, 2011.

*Return of Good Faith Deposit*

The Good Faith Deposit of the Successful Bidder shall be applied to the Purchase Price of such transaction at Closing. The Good Faith Deposits of all other Qualified Bidders shall be held in an interest-bearing escrow account until consummation of the Proposed Sale with the Successful Bidder, and thereafter returned to the respective bidders. If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtor shall be entitled to retain the Good Faith Deposit as part of its damages resulting from the breach or failure to perform by the Successful Bidder.

*Modifications*

The Debtor, with the consent of the DAI, expressly reserves the right to modify the relief requested herein. Moreover, the Debtor, with the consent of DAI, reserves the right, upon notice to all Notice Parties and those parties that have demonstrated an interest in bidding on the Acquired Assets, to: (a) waive terms and conditions set forth herein with respect to any or all

potential bidders, (b) impose additional terms and conditions with respect to any or all potential bidders, (c) extend the deadlines set forth herein, (d) cancel the sale of the Acquired Assets and/or Sale Hearing in open court without further notice; and (e) amend the Bid Procedures as they may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice.

2028985.3