**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>WOMEN'S APPAREL GROUP, LLC<br><br>Debtor. | Chapter 11<br><br>Case No. 11- 16217 (JNF) |

**DEBTOR'S MOTION REQUESTING (I) APPROVAL OF
(A) ORDER APPROVING BID PROCEDURES FOR SALE OF DEBTOR'S ASSETS; (B)
BID PROCEDURES; (C) NOTICE OF SALE; AND (D) FORM OF ASSET PURCHASE
AGREEMENT WITH STALKING HORSE BIDDER; AND (II) RELATED RELIEF**

*(Emergency Determination Requested)*

Women's Apparel Group, LLC, the above-captioned debtor and debtor-in-possession (the "**Debtor**"), by and through its undersigned counsel, hereby files this motion (the "**Motion**"), requesting approval of (A) an order approving certain bid and auction procedures for sale of substantially all of the Debtor's assets (the "**Acquired Assets**"); (B) the form of bid and auction procedures (the "Bid Procedures"); (C) the form of Asset Purchase Agreement (the "**Purchase Agreement**") to be entered into between the Debtor and Distinctive Apparel, Inc. ("**DAI**" or the "**Stalking Horse Purchaser**"), with respect to the proposed sale (the "**Sale**") as a stalking horse agreement in connection therewith and provided to possible additional bidders; (D) approval of the form of Notice of Sale to be used in connection with the proposed Sale and (E) certain related relief.

In support of this Motion, the Debtor respectfully represents:

**Jurisdiction**

1. This Court has jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested in this motion include Sections 105(a), 363 and 365 of the Bankruptcy Code, Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure, and MLBR 6004-1 and 6006-1.

**Background**

3. Debtor is in the business of selling women's clothing and accessories through its web site and mail order catalogs and operates its business from a location at 300 Constitution Drive, Taunton, Massachusetts.

4. On June 29, 2011 (the "**Petition Date**"), NL Ventures VII United, L.L.C., La Vita, Inc., Your Label, Inc., and Suburban Service Corp. (collectively, the "**Petitioning Creditors**") initiated an involuntary petition against the Debtor under Chapter 7 of the Bankruptcy Code, alleging that they were due claims in excess of the amount provided in 11 U.S.C. §303(b) that were not contingent as to liability or the subject of a bona fide dispute as to liability or amount net of the value of any lien on property of the debtor securing such claims.

5. On June 30, 2011, the Bankruptcy Court entered an order limiting the ability of the Debtor to convey assets other than in conformity with 11 U.S.C. §363. Docket No. 20

6. On July 12, 2011, and notwithstanding the Debtor's opposition to the Petitioning Creditors alleged due claims, which the Debtor reserves its right to object to, the Debtor filed a motion for entry of an order for relief (the "**Order for Relief**") and sought to convert this case to one under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**"). Docket No. 47.

7. On July 12, 2011, the Debtor also filed a Motion (the **"DIP Motion"**) and Interim Order (the "**DIP Interim Order**") for (I) Authorization to (A) Obtain Secured Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, and 364(c) AND (d); (B) Granting Security Interests, Superpriority Claims and Adequate Protection; and (C) Use of Cash Collateral and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c). Docket No. 48.

8. On July 13, 2011, the Bankruptcy Court entered an Order for Relief in this matter and allowed the conversion of this case under Section 706 of the Bankruptcy Code to a case under Chapter 11. Docket No. 60.

9. On July 15, 2011, the Bankruptcy Court entered an Interim Order (I) Authorizing (A) Secured Post Petition Financing Pursuant to 11 U.S.C. Sec. 105, 361, 362 and 364(c) and (d); (B) Granting Security Interests, Superpriority Claims and Adequate Protection; and (C) Use of Cash Collateral, and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(C). Docket No. 78.

10. On July 15, 2011, the Debtor filed a Motion Requesting (I) Approval of (A) Asset Purchase Agreement and Authorizing the Sale of Substantially All of the Debtor's Assets Outside the Ordinary Course of Business, Free and Clear of All Liens, Claims, Interests and Encumbrances, and Subject to Competing Offers; and (B) Bid and Auction Procedures; and (II) Related Relief (the "**Sale Motion**"). Docket No. 85.

11. On July 20, 2011, an Official Committee of Unsecured Creditors was appointed. Docket No. 119.

12. The Court held a hearing on August 10, 2011 on five pending motions, including the DIP Motion and the bid and auction procedures portion of the Sale Motion. Thereafter, the

Court ordered that the Debtor submit proposed orders to the Court on those two motions. Docket Nos. 237, 238.

13. On August 10, 2011, pursuant to the Order of the Court, the Debtor circulated a revised version of the Asset Purchase Agreement, the Proposed Bid Procedures Order, the revised Bid Procedures and the Revised Notice of Sale, to all of the objecting creditors and other parties in interest who appeared, either in person or telephonically, at the Hearing.

14. On August 11, 2011 and August 12, 2011 certain parties who had filed objections raised additional concerns as to the revised language in the Proposed Order, the revised Bid Procedures and the Revised Notice of Sale, all of which the Debtor now believes have been resolved to the satisfaction of those parties. However, the parties were unable, despite their good faith efforts, to resolve certain disputes concerning the language of the Asset Purchase Agreement.

15. On August 15, 2011, the Debtor filed a motion to approve the final form of Asset Purchase Agreement. Docket No. 255(**"APA Motion"**).

16. On August 16, 2011, certain creditors, including Paymentech, RT Taunton, Redcats, NL Ventures, and Oracle filed objections to the proposed form of Asset Purchase Agreement. Docket Nos. 258, 260, 262, 263, 265.

17. The Court held a hearing on the Debtor's Motion to approve the final form of Asset Purchase Agreement on August 17, 2011. At the conclusion of the hearing, the Court denied the motion, sustaining the objections of the various creditors. Docket No. 270.

18. Immediately following the August 17, 2011 hearing, the Debtor, DIP Lender and Creditors' Committee worked together to revise the draft documents in a manner that would resolve the objections sustained by the Court.

19. On August 18, 2011, the parties believed they had revised the documents in a manner sufficient to address the objections raised by the objecting creditors and the concerns expressed by the Court at the August 17, 2011 hearing, and were preparing revised documents to re-submit to the Court.

20. Before the Debtor was able to file the aforementioned revised documents, on August 18, 2011, the Court entered an order (i) finding that the Debtor is no longer authorized to borrow from or use the cash collateral of the DIP Lender and (ii) appointing a Chapter 11 Trustee. Docket No. 275.

21. On that same date, the Debtor, DIP Lender and Creditors' Committee filed a joint motion for reconsideration of the Court's August 18, 2011 order or, in the alternative, for a stay. Docket No. 276.

22. On August 19, 2011, the Court granted the requested stay provided that the Debtor submits by August 21, 2011 at 5:00 p.m. (i) a revised proposed Final DIP Order that addresses the Court's stated concerns and (ii) a revised proposed Final Order and Motion relative to approval of bidding procedures for a stalking horse asset purchase agreement that comports with the Court's previous findings and rulings. Docket No. 281.

23. On August 19, 2011, the Debtor circulated proposed forms of Order on Bid Procedures, Bid Procedures, Notice of Sale and Asset Purchase Agreement to objecting creditors and other interested parties for comment.

24. As of August 21, 2011, the Debtor received comments from Redcats that have been incorporated in the proposed form of Asset Purchase Agreement.

25. During the pendency of this proceeding, the Debtor has continued in possession of its properties and is operating and managing its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### Relief Requested and Bases Therefor

**Approval of Order Approving the Bid Procedures,
the Bid Procedures and the Notice of Sale**

26. The Debtor requests that the Bankruptcy Court enter an order substantially in the form attached hereto as **Exhibit A** (the **"Proposed Order"**) approving (a) the Bid Procedures as set forth in **Exhibit I** to the Proposed Order ("**Bid Procedures**") and (b) the Notice of Sale (**Exhibit II** to the Proposed Order) and related relief, including a request that **the Court order that (i) counter offers be delivered by September 6, 2011, (ii) the auction and Sale hearing be scheduled for September 9, 2011 and (iii) a closing occur no later than October 31. 2011.**

27. The Bid Procedures are usual and ordinary sale procedures for going-concern sales in this District and should be approved.

28. The paramount purpose of any sale of property of the estate is maximization of the proceeds to be received. *See, e.g., In re Mushroom Transp. Co., Inc.,* 382 F3d 325, 339 (3d Cir. 2004). Courts recognize that bid procedures are an effective way to enhance competitive bidding and maximize the value to be received from sales of estate property. *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.*, 147 B.R. 650, 659-60.

29. The proposed Bid Procedures will establish parameters under which the value of the Property may be tested at the Sale Hearing. The Bid Procedures will enable the Debtor to conduct an auction in a controlled, open and fair fashion. This will encourage active bidding from financially capable parties and dispel any doubts as to the highest and best offer for the Property.

30. The proposed form of Notice of (I) Intended Sale of Substantially All of the Debtor's Assets Free and Clear of Any Liens, Claims, Encumbrances and Interests, (II) Deadline and Procedures For Submitting Objections, Counteroffers, Or Bids, and (III) Hearing Date (the "Notice of Sale") is **Exhibit II** to **Exhibit A** hereto.

31. Once the Court provides the Debtor with the date for the Sale Hearing and the deadline for filing objections and submission of counterbids, the Debtor will serve the Notice of Sale as provided in the Proposed Order.

**Approval of Asset Purchase Agreement as a Stalking Horse Agreement**

32. The Debtor further requests that the Bankruptcy Court enter the Proposed Order (attached hereto as **Exhibit A**) with respect to its provisions approving the Purchase Agreement which is **Exhibit III**[1] to the Proposed Order and which contains, inter alia, the following provisions:[2]

a. Acquired Assets.

   i. At the Closing, and upon the terms and conditions contained in the Purchase Agreement, and subject to the approval of this Court and pursuant to the Sale Order, the Debtor shall sell, transfer, convey, assign and deliver to Stalking Horse Purchaser, and Stalking Horse Purchaser shall purchase, acquire, assume and accept from the Debtor, all right, title and interest of the Debtor in, to and under the Acquired Assets, free and clear of all Liens, Claims, Interests and Encumbrances, other than any Permitted Encumbrances, to the fullest extent permitted by sections 363 and 365 of the Bankruptcy Code. The Acquired Assets include all of the Debtor's rights title and interest in, to and under the Purchased Assets as identified in the Purchase Agreement; but do not include the Excluded Assets or any executory contracts unless designated as provided in the

---

[1] For informational purposes only, attached hereto as **Exhibit B** is a redline of the Form of APA submitted to the Bankruptcy Court with the APA Motion against the Form of APA attached as Exhibit III to the Proposed Order (**Exhibit A** hereto).

[2] This summary of the Purchase Agreement is provided for the Court's convenience only. To the extent that the summary differs in any way from the terms of the Purchase Agreement, the terms of the Purchase Agreement shall control. Capitalized terms used but not defined in this summary shall have the meanings given in the Purchase Agreement.

        Purchase Agreement to be assumed and assigned after notice and hearing under 11 U.S.C. §365.

b. **Assumed Liabilities.** At the Closing the Stalking Horse Purchaser will assume all of the following liabilities:

   i. any administrative expenses incurred or becoming due at any time from the Petition Date through the Closing, to the extent such administrative expenses are allowed by the Bankruptcy Court in the Case, including any administrative expense claims under Section 503(b)(9) of the Bankruptcy Code and any amounts due to Redcats USA, Inc. for use of the Redcats Equipment (as defined below) by the Debtor (commensurate with amounts previously paid for such Redcats Equipment); provided, however, that an administrative expense shall be deemed allowed unless an objection is filed in the Bankruptcy Court by the Stalking Horse Purchaser at the Stalking Horse Purchaser's sole expense; and provided, further that Assumed Liabilities shall not include administrative expenses relating to professional fees in amounts in excess of the amounts set forth in any Approved Budget as defined in the DIP Order;

   ii. all liabilities under any Contract that is assumed and assigned to Stalking Horse Purchaser;

   iii. all liabilities under any Lease that is assumed and assigned to Stalking Horse Purchaser;

   iv. any cure costs associated with any Contract or Lease that is assumed and assigned to Stalking Horse Purchaser;

   v. all liabilities of the Debtor arising from ownership or use of the Purchased Assets from and after the entry of the Sale Order approving the sale of the Purchased Assets to the Stalking Horse Purchaser;

   vi. all liabilities arising from and after the Closing with respect to the employment, either directly or through a third party, of the Transferred Employees;

   vii. obligations to customers for customer deposits; and

   viii. any and all liabilities, other than unsecured rejection damages, under any executory contract or lease of the Debtor that is incurred or chargeable against the Debtor or the Debtor's bankruptcy estate as a result of the assumption of any Contact or Lease as provided in Section 8.6 of this Agreement.

c. The following shall be the Excluded Assets not purchased by the Stalking Horse Purchaser under the Purchase Agreement:

8

    i. any asset owned by the Debtor that is not a Purchased Asset;

    ii. any net operating losses and any rights or claims to that certain tax refund due to the Debtor in the approximate amount of $3.5 million to which Women's Apparel Group Holdings, Inc. has released any right, title, claim or interest in favor of the Debtor (the "Tax Refund") (but excluding any other tax assets of the Debtor including any refund of any income or franchise tax (whether any such refund is received prior to, on or after the Closing) other than the Tax Refund);

    iii. any actions for preferences, fraudulent conveyances and other avoidance power claims and any recoveries or proceeds thereof under chapter 5 of the Bankruptcy Code;

    iv. all claims, causes of action and rights of recovery belonging to the Debtor, including without limitation, commercial contract and tort claims and insurance claims under directors' and officers' insurance policies;

    v. the Purchase Price;

    vi. any Contract or Lease that is not assigned to Stalking Horse Purchaser;

    vii. except as set forth on Schedule 1.26 to the Purchase Agreement, all insurance policies and rights to proceeds thereof;

    viii. the equity interests of WAG Marketing owned by Debtor;

    ix. any receivable of the Debtor payable by an Affiliate of the Debtor, other than Casual Living;

    x. all bank accounts of the Debtor, other than the lock box account currently in place in which receipts are deposited and swept to Debtor's secured lender which such account shall be transferred to Stalking Horse Purchaser; and

    xi. any rights, claims or causes of action of Debtor under this Agreement.

d. Purchase Price.

    i. Buyer shall pay Debtor an aggregate purchase price for the acquired assets of Eleven Million Two Hundred Fifty Thousand Dollars ($11,250,000) (the "Purchase Price") at or before Closing, of which (i) $10,500,000 shall be paid (A) first by way of a dollar for dollar credit against the outstanding Pre-Petition Indebtedness of Debtor to Stalking Horse Purchaser under the Pre-Petition Loan Documents and/or any post-petition financing provided by Stalking Horse Purchaser to Debtor including the "DIP Indebtedness" under the "DIP Facility" (as such terms are defined in the DIP Order) pursuant to and in accordance with Section 363(k) of the Bankruptcy Code, and (B) second in cash, but only to the

9

      extent the sum of the Pre-Petition Indebtedness and the DIP Indebtedness are less than $10,500,000; (ii) $250,000 payable in cash upon the earlier of three (3) business days following entry of a Sale Order approving the sale to Stalking Horse Purchaser or at the Closing; and (iii) $500,000 shall be paid at or prior to Closing by way of the Stalking Horse Purchaser Note (described below).

  ii. At or prior to Closing, Stalking Horse Purchaser shall issue Debtor a promissory note in the original principal amount of $500,000 (the "Stalking Horse Purchaser Note"). The Stalking Horse Purchaser Note shall not accrue interest, but shall be secured by a lien on all of Stalking Horse Purchaser's assets which shall be subordinate only to a lien in favor of any Person who provides a revolving line of credit to Stalking Horse Purchaser. Stalking Horse Purchaser's payment obligations under the Stalking Horse Purchaser Note shall commence on December 1, 2011, at which time Stalking Horse Purchaser shall make a payment of $150,000 in cash to Debtor. The remaining $350,000 shall be paid in cash in nine (9) equal monthly installments commencing on March 1, 2012.

  iii. At or prior to Closing, Stalking Horse Purchaser shall assume and agree to duly perform and discharge, when due, all of the Assumed Liabilities.

e. **Designation Rights.**

  i. The Stalking Horse Purchaser shall have the right, no later than twenty-one (21) days prior to the Closing by written notice to the Debtor (the "Designation Notice"), to designate which Contracts and Leases it wishes to have the Debtor assume and assign to the Stalking Horse Purchaser as Assigned Contracts and Assigned Leases.

  ii. No later than five (5) days following receipt of the Designation Notice, the Debtor shall (i) file with the Bankruptcy Court a motion to assume and assign such Assigned Contracts and Assigned Leases to Stalking Horse Purchaser (an "Assignment Motion"); and (ii) serve on all counterparties to Assigned Contracts and Assigned Leases a notice (an "Assignment Notice") containing (a) a statement that any assumption and assignment shall be allowed only to the extent permitted under section 365 of the Bankruptcy Code, (b) a description of the Assigned Contract or Assigned Lease by title and date and any amendment thereto, (c) the total amount that the Stalking Horse Purchaser shows on its books and records as due and payable to cure any payment default under the Assigned Contract or Assigned Lease through the date of its proposed assumption (the "Cure Amount"), (d) the name and address of the Stalking Horse Purchaser, (e) evidence from the Stalking Horse Purchaser that the Stalking Horse Purchaser can provide adequate assurance of future performance, which evidence may be supplemented after delivery of the notice, (f) the name and address of the party from which the holder of the Assigned Contract or Assigned Lease may obtain financial information about the Stalking Horse Purchaser, and (g) the time by which any objection to such assumption and assignment under section 365 of the

10

        Bankruptcy Code must be filed with the Bankruptcy Court, which date shall be no earlier than fourteen (14) days of service of such notice.

    iii. In the event of an objection to the proposed assumption and assignment of, or Cure Amount related to, an Assigned Contract or Assigned Lease, the Debtor and Stalking Horse Purchaser shall, at the Stalking Horse Purchaser's sole expense, attempt to resolve such objection or litigate such objection under such procedures as the Bankruptcy Court shall approve and proscribe. It shall not be a condition to Closing that any Contract or Lease be assumed and assigned to the Stalking Horse Purchaser. In the event that a dispute regarding the assumption and assignment of, or the Cure Amount related to, an Assigned Contract or Assigned Lease is not resolved as of the Closing, the parties shall nonetheless remain obligated to consummate the Sale of the Purchased Assets, excluding any such Assigned Contract or Assigned Lease for which an objection is outstanding and unresolved. Stalking Horse Purchaser may, at any time prior to assumption, by written notice to Debtor, remove any Contract or Lease from the Designation Notice. The Stalking Horse Purchaser shall be responsible for the payment of all Cure Amounts.

f. Conditions to Obligations.

    i. The obligation of the Debtor and Stalking Horse Purchaser to consummate the transactions to be performed by them in connection with the Closing are subject to the satisfaction or waiver or various closing conditions contained in Article 7 of the Purchase Agreement, which include but are not limited to the Bankruptcy Court entering the Bid Procedures Order and the Sale Order.

g. Privacy Policy.

    i. The Stalking Horse Purchaser represents that as to all consumer information gathered by the Debtor the Stalking Horse Purchase will maintain the privacy policy accepted by customers who place orders either through catalog sales or internet sales with the Debtor as such policy has been revised from time to time and accepted by customers who use the web sites maintained by the Debtor or purchase merchandise through the various catalogs produced by the Debtor.

## **EMERGENCY DETERMINATION REQUESTED**

33. The Debtor respectfully requests that the Court grant the Motion without further notice or hearing or, in the alternative, schedule a hearing on a date as soon hereafter as the Court may accommodate.

11

34. The Debtor has engaged Financo, Inc. as its investment banker to conduct the sale process with the goal of maximizing the sale price of its assets.

35. The sales process is being hampered by the lack of a final form of Bid Procedures, Sale Notice and Purchase Agreement.

36. Additionally, the current financing runs only through September 9, 2011 under the lending order submitted this date to the Bankruptcy Court and the Debtor needs to complete the sale process so that it may either continue financing through the Stalking Horse Bidder or any Successful Bidder by that date.

## **NOTICE**

37. The Debtor will serve this Motion on the Office of the United States Trustee, the Creditor's Committee, the DIP Lender, and all other parties who have filed a notice of appearance in this case. The Debtor submits that such service provides sufficient notice in light of the nature of the relief requested and requests that the Court approve such notice.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (a) approving the bid and auction procedures for sale of substantially all of the Debtor's assets; (b) authorizing the Asset Purchase Agreement between the Debtor and Distinctive Apparel, Inc. with respect to the proposed sale as a stalking horse agreement in connection therewith; (c) approving of the form of Notice of Sale to be used in connection with the proposed Sale; and (d) granting all other relief requested therein and deemed just and proper by the Court

Dated: August 21, 2011

        WOMEN'S APPAREL GROUP, LLC
        By its counsel,
        /s/ Richard S. Rosenstein
        Richard S. Rosenstein (BBO #429100)
        James F. Coffey (BBO #552620)
        NUTTER, MCCLENNEN & FISH, LLP
        Seaport West
        155 Seaport Boulevard
        Boston, MA 02210-2604
        (617) 439-2000
        jcoffey@nutter.com

        *Counsel for the Debtor*
          *and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re: ) | |
| ) | |
| WOMEN'S APPAREL GROUP, LLC ) | Chapter 11 |
| ) | Case No. 11-16217 (JNF) |
| Debtor. ) | |
| ) | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 21st day of August, 2011, a copy of the foregoing document filed by Richard Rosenstein, Esq. and the law firm of Nutter, McClennen & Fish, LLP in the captioned matter was served either by ECF upon the parties on the attached service list (for registered participants as identified on the Notice of Electronic Filing (NEF)) or e-mail (for non-registered participants).

/s/ Richard S. Rosenstein

Dated: August 21 , 2011

# SERVICE LIST

**U.S. Trustee**

John Fitzgerald
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109

**Petitioning Creditors**

Michael J. Goldberg, Esq.
Casner & Edwards, LLP
303 Congress Street
Boston, MA 02210
*(Counsel to NL Ventures VII United, L.L.C.)*

Brian K. Aylward, Esq.
Smith, Levenson, Cullen & Aylward, P.C.
5 Essex Green Dr.
Peabody, MA 01960
*(Counsel to La Vita, Inc. and Your Label, Inc.)*

Marianne E. Brown, Esq.
Law Offices of Marianne E. Brown
22 Mill Street
Suite 408
Arlington, MA 02476
*(Counsel to Suburban Service Corporation)*

**Creditors' Committee**

Eric R. Wilson
Jason R. Adams
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 808-7800
Fax: (212) 808-7897
(*Proposed Counsel to Creditors' Committee*)

**Noticed Appearances**

Mary T. Sullivan, Esq.
Anne R. Sills, Esq.
Segal Roitman, LLP

111 Devonshire Street, Fifth Floor
Boston, MA 02109
*(Counsel to The New England Joint Board, UNITE-HERE)*

Douglas R. Gooding, Esq.
William S. McMahon, Esq.
Choate Hall & Stewart LLP
Two International Place
Boston, MA 02110
*(Counsel to Distinctive Apparel, Inc.)*

Alan Noskow, Esq.
Erika Morabito, Esq.
Patton Boggs, LLP
2550 M Street, NW
Washington, DC 20037
*(Counsel to Distinctive Apparel, Inc.)*

Norman N. Kinel, Esq.
David A. Van Grouw, Esq.
Lowenstein Sandler PC
1251 6th Avenue
New York, NY 10020
*(Counsel to Paymentech LLC)*

Euripides Dalmanieras, Esq.
Foley Hoag, LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts 02210
*(Counsel to CIBER, Inc.)*

Kenneth A. Rosen, Esq.
Sharon L. Levine, Esq.
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, NJ 07068
*(Counsel to Gould Paper Corporation)*

Shawn M. Christianson, Esq.
Buchalter Nemer
333 Market St., 25th Fl.
San Francisco, CA 94105
*(Counsel to Oracle America, Inc.)*

Peter L. Hatem, Esq.

Attorney Peter L. Hatem, P.C.
258 U.S. Route One
Scarborough, Maine 04074-8904
*(Counsel to Oracle America, Inc.)*

Harlan M. Lazarus, Esq.
Lazarus & Lazarus, P.C.
240 Madison Avenue, 8th Floor
New York, NY  10016
*(Counsel to Joining Forest (International) Co., Ltd. , Li Cheng Garments (Hubei) Co., Ltd , Zhuji Wonderful Win Garments Co., Ltd. , Zhuji Dahe Clothing Co., Ltd. , Zhu Hai Hao Yuan Garment Co., Ltd. , Zhejiang Charm Winner Garments Co., Ltd. , Y.C. (Lam's) Knitting Factory Ltd. , Venco Industrial Ltd., Sinotex-Fortune Profit GMT Limited , Shenglida Garments Zhejiang Co., Ltd , Shanghai Surpass Corp., Ltd., Shanghai Rongyu Garment Co. Ltd., Riverland International Group Limited, Ningbo Seduno Import & Export Co., Ltd., Jiangsu Jing Meng Knitting Co., Ltd., Hangzhou Xinhe Import & Export Co., Ltd., Hangzhou Chunjie Garmets Co., Ltd., Crown Elegant Trading Limited , Better Glory International Limited)*

Sean Gillian, Esq.
Gesmer Updegrove LLP
40 Broad Street
Boston, MA 02109
*(Counsel to Neolane)*

Joseph S.U. Bodoff, Esq.
Bodoff & Associates, P.C.
120 Water Street
Boston, MA 02109-4251
*(Counsel to R.T. Tauton LLC)*

Peter B. McGlynn, Esq.
Bernkopf Goodman LLP
125 Summer Street, Ste. 1300
Boston, MA 02110
*(Counsel to USA-800, Inc.)*

Christopher A. Ward, Esq.
Polsinelli Shughart
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
*(Counsel to USA-800, Inc.)*

James E. Bird, Esq.
Polsinelli Shughart

700 W. 47th Street, Suite 1000
Kansas City, MO 64112
*(Counsel to USA-800, Inc.)*

Thomas H. Curran, Esq.
McCarter & English, LLP
265 Franklin Street
Boston, MA 02110
*(Counsel to Verizon Communications)*

Paula K. Jacobi, Esq.
Barnes & Thornburg LLP
One North Wacker Drive,
Suite 4400
Chicago, IL 60606
*(Counsel to R.T. Tauton LLC)*

Kenneth J. Schweiker, Jr., Esq.
Brown & Connery, LLP
6 North Broad Street
Woodbury, NJ 08096
(Counsel to SAP America, Inc. and SAP Industries)

2038066.3